# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned, D. Hiatt Collins, hereby certifies pursuant to Local Rules 2081-1 and 9013-3 that on the dates listed in Exhibit H attached hereto, he caused to be served a true copy of the following documents:

A.     DEBTOR'S EXPEDITED MOTION TO LIMIT SUBSEQUENT NOTICES AND REMOVE PARTIES FROM FULL MATRIX

B.     EXPEDITED MOTION FOR PERMISSION TO MAINTAIN AND USE EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM AND BUSINESS FORMS

C.     EXPEDITED MOTION FOR PERMISSION TO PAY EMPLOYEE BENEFITS, TAXES, AND RELATED EXPENSES

D.     EXPEDITED MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 366(A) AND 507 (I) FOR AUTHORITY TO PAY PREPETITION UTILITY CLAIMS (II) TO DETERMINE ADEQUACY OF ASSURANCE OF PAYMENT FOR FUTURE SERVICE FROM UTILITIES AND (III) TO ESTABLISH PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE

E.     EXPEDITED MOTION FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS

F.     VERIFIED STATEMENT OF ROBBY MCGEE IN SUPPORT OF FIRST DAY MOTIONS

G.     EXPEDITED ORDER SETTING EMERGENCY HEARING ON FIRST DAY MOTIONS

A true and correct copy of the documents above is attached hereto as <u>Exhibit A</u> through <u>Exhibit G</u>.  A list of the parties upon whom this document was served, the dates of service, and the manner in which the parties were served is attached hereto as <u>Exhibit H.</u>

Respectfully submitted this 6th day of January 2014.

<u>/s/ D. Hiatt Collins</u>
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave., South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
<u>hcollins@gsrm.com</u>; <u>rbucy@gsrm.com</u>;
<u>tforrester@gsrm.com</u>; <u>lknight@gsrm.com</u>;
<u>bke@gsrm.com</u>

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | ) |
| | ) |
| **NEW LIFE INTERNATIONAL,** | )    Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) |
| **dba NATIONAL COMMUNITY** | ) |
| **FOUNDATION,** | ) |
| **dba BAND ANGELS,** | ) |
| | ) |
| Debtor. | ) |

### DEBTOR'S EXPEDITED MOTION TO LIMIT SUBSEQUENT NOTICES AND REMOVE PARTIES FROM FULL MATRIX

New Life International, Debtor and Debtor-in-Possession ("Debtor"), hereby moves, pursuant to Fed. R. Bankr. P. 2002, to limit subsequent notices in this case and remove certain parties who have no claim or other interest in this case from the Full Matrix (defined below). This is a Motion of the type described in LBR 2081-1(a)(5). As grounds therefor, and in compliance with LBR 9075 and 2081-1, Debtor respectfully represents as follows:

1. **Expedited Relief Requested:** Debtor seeks authorization to limit notices of documents filed henceforth. Debtor also seeks authorization to remove from the matrix certain parties who are not creditors and have no interest in this case, unless any such parties specifically request notice.

2. **Reason for Urgency:** The Full Matrix (defined below) includes several hundred parties to various types of contracts with Debtor, including parties to annuity contracts and holders of promissory notes, as well as ordinary course creditors and other interested parties. Service to the entire Full Matrix, even though some parties will receive electronic service, will be extremely costly and burdensome, not only to Debtor, but also to other parties that will be required to give notices in this case.

### EXHIBIT A

3.    **Notice given**:  Immediately upon entry of an Order setting an expedited hearing on this Motion, the Motion and proposed Order granting same will be served upon the United States Trustee, the Debtor's known secured creditors, and the 20 largest unsecured creditors of Debtor by electronic mail, facsimile, or telephone (where known) and by first class mail. Further, in compliance with LBR 2081-1(b), Debtor, through counsel, notified the U. S. Trustee on the morning of December 30, 2013 before this case was filed, of its anticipated filing, and had preliminary discussions as to the date and time of a hearing on Debtor's First Day Motions.  It provided a copy of this Motion and proposed Order by electronic mail the evening of December 31, 2013, which is over seven (7) days before the requested hearing date and time.  Thus, adequate notice has been given to the U. S. Trustee.

4.    **Suggestion for hearing**:  Debtor suggests that the hearing on this motion be set for 10:00 A.M., January 7, 2014.

5.    **Statements in support of motion**:  Further statements are below.

**BACKGROUND AND JURISDICTION**

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which this Court has the authority to enter final and dispositive orders and judgments.  The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. § 105.

7.    On December 31, 2013 (the "Petition Date"), Debtor filed its voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code").  Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor was continued, and remains, in possession of its property as Debtor-in-Possession, and is continuing to operate its business and manage its properties as such.

No trustee has been appointed in the above-captioned case (the "Chapter 11 Case"). No official creditors' committee been formed.

8. New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act. Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

9. NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI. NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries: World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC. All of the majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

10. NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from its other real estate and operating entities. The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

11. Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP"). CGAs and ChIPs are recognized under the Internal

Revenue Code. In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state. Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the single or joint lifetime of each donor. Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

12. NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3). In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

## MOTION TO LIMIT NOTICE

13. Debtors will file a matrix that includes all parties required (or potentially required) to receive notice under Fed. R. Bankr. P. 2002 (the "Full Matrix"). The Full Matrix consists of several hundred parties to various types of contracts with Debtor, including holders of annuity contracts, holders of promissory notes, as well as ordinary course creditors and other interested parties. Service to the entire Full Matrix, even with electronic service, will be extremely costly and burdensome.

14. The interests of economy to Debtor's estate will be served, without harm to the interests of creditors or other interested parties, by the limited notice and service of documents, pursuant to Fed. R. Bankr. P. 2002, to the following, as may be amended from time to time: (i) the Debtor; (ii) counsel for the Debtor; (iii) the twenty (20) largest unsecured creditors of the Debtor *or* members of the Official Unsecured Creditors Committee if and when such a committee is established; (iv) counsel for the Official Unsecured Creditors Committee if and

when such counsel is retained; (v) the U.S. Trustee; (vi) all secured creditors or their counsel; (vii) Debtor's financial consultant; (viii) counsel, creditors and other interested parties who have heretofore or shall hereafter file a request to receive notice under Fed. R. Bankr. P. 2002(g); (ix) the appropriate regulatory official for each state in which Debtor conducts business; and, (x) parties entitled to notice under Fed. R. Bankr. P. 2002(j) (the "Limited Service List").

15.     If counsel is retained to represent an Official Committee of Unsecured Creditors, such counsel will be added to the Limited Service List in place of the individual members of the Committee, unless such counsel specifically requests that individual members remain on the Limited Service List.

16.     Any party on the Limited Service List that requests electronic service through the Court's CM/ECF system will be given notice in accordance with the Court's procedures for such electronic notice and no further or additional notice to such party shall be required.

17.     Any party that will be directly affected by any proposed action or filing will be given notice of that particular action or filing at Debtor's last known address for such party, or such address as the party provides to Debtor, in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, whether or not such party is included on the Limited Service List.

18.     Notice will not be limited for any filings regarding plan confirmation; motions and orders regarding dismissal or conversion; motions and orders regarding the appointment of a trustee; or deadlines for filing claims.

19.     Any party with an interest in the case may file a request for notices under the Federal Rules of Bankruptcy Procedure and, upon the filing of such a request, shall be added to the Limited Service List.

## MOTION TO REMOVE PARTIES FROM FULL MATRIX

20.     Debtor is a party to certain contracts with individuals, generally referred to as "Donor Advised Contracts" and "Family Foundation Contracts."  These contracts are similar to one another and arose out of contributions to Debtor from individual donors in past years.  The contracts generally work as described in the following example:  Mr. Donor made a $100,000.00 contribution.  Under federal tax law, Mr. Donor was entitled to take a full $100,000.00 charitable deduction from his income tax return for the year in which the contribution was made.  He has no further legal or equitable interest in the funds that he donated.  All of the contributions legally belong solely to Debtor from and after the time they are made. The funds are not segregated.  The "account" attributed to Mr. Donor is only a bookkeeping entry and is not a liability of Debtor.  Debtor is entitled to contribute the available funds (or income from the investment of such funds), in the exercise of its own judgment, in such a way as to further Debtor's Christian missions.  Although Mr. Donor was allowed to advise or suggest to Debtor how he would like for Debtor to use the funds (or income therefrom), the final decision as to the use of these funds is Debtor's.  Debtor is not required to comply with Mr. Donor's suggestion or advice.

21.     Absent further order of the Court, Debtor is not authorized to make charitable donations and believes that it is unlikely that it will be able to make donations in the future.  It appears unlikely that the orderly liquidation of Debtor's affairs will yield assets above that which is required to satisfy the claims of creditors, including the CGAs and ChIPs.  Hence, the concept of donor advice is moot.  Since donors can no longer make suggestions or give advice to Debtor as to the use of donated funds, and Debtor is the full outright owner of the assets, donors under Donor Advised Contracts and Family Foundation Contracts are neither creditors nor parties in interest in this case, should be removed from the Full Matrix, and should receive no further notices or documents in this case unless they specifically request to do so.

22.     A proposed Expedited Order granting this Motion is attached hereto as Exhibit A.

WHEREFORE, Debtor respectfully prays as follows:

A.      That the Court enter the proposed Order, attached as Exhibit A, authorizing Debtor to limit notice to parties in interest in this case, and to remove parties to Donor Advised Contracts and Family Foundation Contracts from the Full Matrix, as described hereinabove.

B.      That the Court enter such Order on an expedited basis.

C.      That such Order be entered *nunc pro tunc* December 31, 2013.

D.      That the Court grant Debtor such other, further and general relief as is just.

/s/ Linda W. Knight
Linda W. Knight, G. Rhea Bucy, Thomas H. Forrester,
D. Hiatt Collins
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave., South
Nashville, TN  37201
(615) 244-4994
Fax (615) 256-6339
lknight@gsrrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; hcollins@gsrm.com;bke@gsrm.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |

## EXPEDITED ORDER GRANTING DEBTOR'S EXPEDITED MOTION TO LIMIT SUBSEQUENT NOTICES AND REMOVE PARTIES FROM FULL MATRIX

This matter came on for hearing at _____. A.M. on January 7, 2014, on the Expedited Motion of New Life International, Debtor and Debtor-in-Possession ("Debtor"), pursuant to Fed. R. Bankr. P. 2002, to limit subsequent notices in this case and remove certain parties who have no claim or other interest in this case from the Full Matrix (defined below) (Docket No. __). At the hearing, the following appearances were made: Mr. G. Rhea Bucy, Mr. Thomas H. Forrester, Ms. Linda W. Knight and Mr. D. Hiatt Collins, counsel for Debtor. Debtor introduced into evidence the Verified Statement of Mr. Robby McGee, President of Debtor. The Court also heard the testimony of Mr. McGee.

AND IT APPEARING that the Court has considered the Motion, the proceedings and evidence introduced at the hearing, including the Verified Statement and testimony of Mr. McGee, and the entire record in this matter, and holds that the Motion is well-taken and that good and sufficient grounds therefor are shown.

AND IT, FURTHER, APPEARING that Debtor has given notice in compliance with LBR 2081-1, that no timely Objection was filed, and that no further notice hereof or hearing hereon is necessary;

## EXHIBIT A

AND IT, FURTHER, APPEARING that emergency consideration of the Motion is appropriate and necessary;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.      The Motion is hereby granted in its entirety.

2.      Except as provided otherwise herein or subsequent order of the Court, future notices and service of documents shall be limited to the following, as may be amended from time to time: : (i) the Debtor; (ii) counsel for the Debtor; (iii) the twenty (20) largest unsecured creditors of the Debtor *or* members of the Official Unsecured Creditors Committee if and when such a committee is established; (iv) counsel  for the Official Unsecured Creditors Committee if and when such counsel is retained; (v) the U.S.  Trustee; (vi) all  secured creditors  or  their counsel; (vii)  Debtor's financial consultant; (viii) counsel, creditors  and  other interested parties who have heretofore or shall hereafter file a request to receive notice under Fed. R. Bankr. P. 2002(g); (ix) the appropriate regulatory official for each state in which Debtor conducts business; and, (x) parties entitled to notice under Fed. R. Bankr. P. 2002(j) (the "Limited Service List").

3.      If counsel is retained to represent an Official Committee of Unsecured Creditors, such counsel shall be added to the Limited Service List in place of the individual members of the Committee, unless such counsel specifically requests that individual members remain on the Limited Service List.

4.      Any party on the Limited Service List that requests electronic service through the Court's CM/ECF shall receive notice in accordance with the Court's procedures for such electronic notice and no further or additional notice to such parties shall be required.

5.      Any party that will be directly affected by any proposed action or filing with the Court shall be given notice of that particular action or filing, in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, at Debtor's last known address for such party or such

**EXHIBIT A**

address as the party provides to Debtor, whether or not such party is included on the Limited Service List.

6.      Notice shall not be limited for any notices regarding plan confirmation; motions and orders regarding dismissal or conversion; motions and orders regarding the appointment of a trustee; or deadlines for filing claims.

7.      Any party with an interest in the case may file a request for notices under the Federal Rules of Bankruptcy Procedure and, upon the filing of such a request, shall be added to the Limited Service List. Creditors and other parties in interest shall be notified of the procedures for requesting notice or to otherwise to be added to the Limited Service List by the inclusion of such procedures in the notice of the § 341 meeting of creditors (the "341 Notice") or by separate order or notice served with the 341 Notice.

8.      Notice given to the Limited Service List in accordance with the provisions of this Order shall constitute good and adequate notice.

9.      The parties designated by Debtor as parties to "Donor Advised Contracts" and "Family Foundation Contracts" shall be removed from the Full Matrix and shall not be sent any further notices or documents filed in this case.  If any party to a Donor Advised Contract or a Family Foundation Contract desires to be added to the Full Matrix, he or she shall file a request for notices in accordance with Paragraph 7 above.

10.     Debtor is authorized to execute and deliver any additional documents and do any and all acts and things that may be required to carry out the intent and purpose of this Order.

Enter *nunc pro tunc* December 31, 2013.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

## EXHIBIT A

APPROVED FOR ENTRY:

/s/ Linda W. Knight
Linda W. Knight, G. Rhea Bucy, Thomas H. Forrester,
D. Hiatt Collins
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994
Fax (615) 256-6339
lknight@gsrm.com;rbucy@gsrm.com; tforrester@gsrm.com;
hcollins@gsrm.com;bke@gsrm.com

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## EXPEDITED MOTION FOR PERMISSION TO MAINTAIN AND USE EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM AND BUSINESS FORMS

Comes now New Life International, Debtor and Debtor-in-Possession ("Debtor" or "NLI"), and submits this Expedited Motion for Permission to Maintain and Use Existing Bank Accounts, Cash Management System and Business Forms (the "Motion").

This is a Motion of the type described in LBR 2081-1(a)(10).

As grounds therefor, and in compliance with LBR 9075-1 and 2081-1, Debtor respectfully represents as follows:

1.      **Expedited relief Requested:**   Authorization to maintain and use Debtor's existing bank accounts, system for management of cash, and checks and other business forms.

2.      **Reason for Urgency:**  Absent the relief requested herein, Debtor is not permitted to use its existing bank accounts postpetition.  The Debtor the requirement to open new accounts immediately will severely disrupt the Debtor's cash management system.

3.      **Notice given**:  Immediately upon entry of an Order setting an expedited hearing on this Motion, the Motion and proposed Order granting same will be served upon the United States Trustee, the Debtor's known secured creditors, the 20 largest unsecured creditors of Debtor, and Pinnacle Bank, by electronic mail, facsimile, or telephone (where known) and by first class mail.

## EXHIBIT B

Further, in compliance with LBR 2081-1(b), Debtor, through counsel, notified the U. S. Trustee on the morning of December 30, 2013 before this case was filed, of its anticipated filing, and had preliminary discussions as to the date and time of a hearing on Debtor's First Day Motions. It provided a copy of this Motion and proposed Order by electronic mail the evening of December 31, 2013, which is over seven (7) days before the requested hearing date and time. Thus, adequate notice has been given to the U. S. Trustee.

4. **Suggestion for hearing**: Movant suggests that the hearing on this motion be set for 10:00 A.M., Tuesday, January 7, 2014.

5. **Statements in support of motion**: Further statements are below.

## BACKGROUND AND JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which this Court has the authority to enter final and dispositive orders and judgments. The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. § 105.

7. On December 31, 2013 (the "Petition Date"), Debtor filed its voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor was continued, and remains, in possession of its property as Debtor-in-Possession, and is continuing to operate its business and manage its properties as such. No trustee has been appointed in the above-captioned case (the "Chapter 11 Case"). No official creditors' committee been formed.

8. New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act.

Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

9.     NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI.  NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries:  World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC.  All of the majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

10.     NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from other real estate and operating entities.   The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

11.     Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP").  CGAs and ChIPs are recognized under the Internal Revenue Code.  In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state.  Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the single or joint lifetime of each donor.  Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

12.     NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3).  In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

## DEBTOR'S EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM AND BUSINESS FORMS

13.     As of the Petition Date, Debtor maintained the following bank accounts:

A.     A local operating account at Pinnacle Bank in Nashville.

B.     A local payroll account at Pinnacle Bank in Nashville.

C.     Two local depository accounts at Pinnacle Bank in Nashville.

D.     A local depository account at Pinnacle Bank in Nashville in the name of New Life International d/b/a The New Life Group.

14.     Debtor's income is deposited into the various accounts, which Debtor uses to pay its ordinary trade vendors, its landlord, debt service, property maintenance expenses, taxes, employment and payroll-related expenses, and generally all of its disbursements.

## RELIEF REQUESTED

15.     Debtor requests that the Court waive the requirement contained in the Chapter 11 Operating Guidelines and Reporting Requirements of the U. S. Trustee, that all prepetition bank accounts be closed as of the Petition Date and that new postpetition bank accounts be opened, with checks imprinted with "Debtor-in-Possession."  Compliance with such requirements would unnecessarily disrupt Debtor's business, impair Debtor's efforts to stabilize operations at a critical stage of this case, and would not confer any benefit on those dealing with Debtor.

16.     Maintaining the existing accounts is vitally important to Debtor because a large portion of the funds that it receives and disburses are transferred electronically.  The closing of existing accounts and opening of new accounts would cause confusion and disruption, and

materially slow the receipt and disbursement of funds at this critical time in Debtor's business. In addition, the Debtor has recently transferred its bank accounts to Pinnacle Bank, a depository approved by the Office of the United States Trustee, Region 8, and opening a second new group of accounts would cause unnecessary disruption to the Debtor's operation.

17.    All parties in interest will be served by preserving business continuity and avoiding the disruption and delay to Debtor's business activities that would necessarily result from closing the accounts and opening new accounts.

18.    Debtor therefore requests that the Court deem its prepetition bank accounts to be Debtor-in-Possession accounts, and authorize their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as during the pre-petition period.  All accounts will be internally designated and styled with each bank as Debtor-in-Possession accounts.

19.    To minimize expenses, Debtor also requests permission to continue to use its correspondence and business forms, such as purchase orders, checks, letterhead, envelopes, insurance and reimbursement forms, substantially in the forms existing immediately prior to the Petition Date, without reference to its status as Debtor-in-Possession.  Both Debtor and the parties with which it regularly deals depend on the uniformity of these forms to conduct their transactions with maximum efficiency.  Substantial time and expense would be required to print new business forms.  Furthermore, use of new forms may slow the pace of Debtor's everyday transactions with parties which are accustomed to Debtor's current forms.  Debtor proposes that if it needs to purchase new business forms during the pendency of these cases, such forms not be required to include a legend referring to the Debtor as Debtor-in-Possession.

20.    To the best of Debtor's knowledge, continuation of its prepetition accounts, cash management system and business forms will not negatively affect the rights of any creditors or

parties in interest.  The granting of this Motion will not affect the reports and information that Debtor is required to provide, or otherwise affect its conduct as Debtor-in-Possession.

21.     Conversely, if Debtor is not permitted to maintain and utilize its existing accounts, cash management system and business forms, Debtor believes and respectfully represents that prejudice will result, including (i) disruption in Debtor's ordinary financial affairs and business operations, diverting it from its duties as Debtor-in-Possession; (ii) delay in the administration of Debtor's estate; and (iii) cost to the estate to set up new cash and deposit systems, open new accounts, print new business forms, and print new checks.

22.     The granting of the relief sought herein is in the best interests of Debtor, its estates, and its creditors.

23.     Upon entry of an Order granting this Motion, Debtor will serve copies thereof upon each bank with which it does business.  Debtor is advised that such banks are authorized depositories for funds of bankruptcy estates in the Middle District of Tennessee.

24.     In support of this Motion, Debtor relies upon and incorporates by this reference the Verified Statement of Mr. Robby McGee, President of Debtor, filed simultaneously herewith.

25.     A proposed Order granting this Motion is attached hereto as **Exhibit A**.

WHEREFORE, Debtor respectfully prays as follows:

A.      That this Court enter its order authorizing Debtor to

1.      Continue using the cash management system that Debtor maintained before the commencement of this Chapter 11 case.

2.      Maintain its existing bank accounts and deposit and banking practices;

3.      Close any of its existing accounts and open and close new accounts at its discretion, in compliance with U.S. Trustee Guidelines but without referring to the existence of a bankruptcy case or its status as a Debtor-in-Possession on said accounts

4.      Use the same business forms that Debtor used prepetition;

B.      That the Court enter such order on an expedited basis.

C.      That such Order be entered *nunc pro tunc* December 31, 2013.

D.      That the Court grant Debtor such other, further and general relief as is just.

Respectfully submitted this 31st day of December 2013.

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave., South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**EXPEDITED ORDER GRANTING EXPEDITED MOTION FOR
PERMISSION TO MAINTAIN AND USE EXISTING BANK ACCOUNTS,
CASH MANAGEMENT SYSTEM AND BUSINESS FORMS**

This matter came on for hearing on January 7, 2014, upon the Expedited Motion for

Permission to Maintain and Use Existing Bank Accounts, Cash Management System and

Business Forms (the "Motion"), filed herein by the Debtor and Debtor-in-Possession ("Debtor").

At the hearing, the following appearances were made: Mr. G. Rhea Bucy, Mr. Thomas

H. Forrester, Ms. Linda W. Knight and Mr. D. Hiatt Collins, counsel for Debtor. Debtor

introduced into evidence the Verified Statement of Mr. Robby McGee, President of Debtor. The

Court also heard the testimony of Mr. McGee.

AND IT APPEARING that the Court has considered the Motion, the proceedings and

evidence introduced at the hearing, including the Verified Statement and testimony of Mr.

McGee, and the entire record in this matter, and holds that the Motion is well-taken and that

good and sufficient grounds therefor are shown;

AND IT, FURTHER, APPEARING that Debtor has given notice in compliance with LBR 2081-1, that no timely Objection was filed, and that no further notice hereof or hearing hereon is necessary;

AND IT, FURTHER, APPEARING that emergency consideration of the Motion is appropriate and necessary;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.      The Motion is hereby granted.

2.      Debtor is authorized and permitted to continue to manage its cash pursuant to the cash management system that it used prior to the commencement of this Chapter 11 case, as described in the Motion.

3.      For internal purposes, Debtor's prepetition and postpetition bank accounts shall be deemed Debtor-in-Possession accounts.  The Banks shall internally designate such prepetition bank accounts "Debtor-in-Possession," and shall continue to report and comply with U.S. Trustee depository guidelines.

4.      The prepetition bank accounts retained postpetition, and any new accounts which Debtor opens postpetition are hereinafter referred to as "Bank Accounts."

5.      All banks at which the Bank Accounts are maintained, including any banks at which Debtor opens new accounts postpetition, (collectively, sometimes, the "Banks"), are authorized and directed to:

A.      Continue to service and administer the prepetition Bank Accounts as accounts of the Debtor, in its capacity as Debtor-in-Possession, the same as they were maintained prepetition, without interruption and in the usual and ordinary course.

B.      Receive, process, honor and pay any and all checks, drafts, wires or other authorized electronic transfers issued on the Bank Accounts (i) on account of a claim (as such

term is defined in 11 U.S.C. § 101(5)) arising on or after the Petition Date, or (ii) as authorized, *so long as* sufficient funds, whether deposited prior or subsequent to the Petition Date, are in said Bank Accounts to cover and permit payment thereof.

        C.     Accept and honor all directions from Debtor as to which checks, electronic transfers and other items should be honored or dishonored, whether the checks are dated prior to, on or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by some other order of the Court.

        D.     Honor Debtor's requests to (i) close any of the Bank Accounts, (ii) open new Bank Accounts, and (iii) stop payment as to checks, ACH Transfers and other items.

      6.     Any final payment which any Bank may have made, *prior to* the Petition Date, of a check, draft or other item drawn against any of the Bank Accounts, or any cashier's check, treasurer's check or other instrument issued by any Bank for the account of or on behalf of the Debtor, that was required to be made pursuant to a midnight deadline or otherwise, shall be deemed paid and cleared prior to the Petition Date for all purposes, whether or not such payment was debited from the Bank Accounts prior to the Petition Date.

      7.     Debtor shall serve a copy of this Order on all Banks holding Bank Accounts within three (3) business days after the entry of this Order.

      8.     This Order is without prejudice to the Debtor's rights to (i) close any of the prepetition Bank Accounts or (ii) open or close postpetition Bank Accounts at any banking institution(s).

      9.     For all purposes in this Order, any and all accounts opened by Debtor on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date) and any and all banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

10.   Debtor and the Banks are hereby authorized and directed to continue to perform pursuant to the terms of the prepetition agreements that exist between them, *except* to the extent expressly directed to the contrary by the terms of this Order.  The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, *except* to the extent modified by the terms of this Order or by operation of the Bankruptcy Code or Rules.

11.   Debtor is authorized to continue to use its existing business forms.

12.   As requested in the Motion, Debtor shall not be required to have printed on its checks, other financial records or any other business forms or documents any legend referring to this case or to Debtor as a Debtor-in-Possession.  This provision is subject to the approval of the Office of the U. S. Trustee.  If the United States Trustee deems that such a legend should be printed on a particular type of document, Debtor may request a ruling from this Court as to whether it shall be required to print such a legend.

13.   Debtor is authorized to execute any additional documents as may be required to carry out the intent and purpose of this Order.

Enter *nunc pro tunc* December 31, 2013.

<div style="border:1px solid black">

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY**
**AS INDICATED AT THE TOP OF THE FIRST PAGE.**

</div>

APPROVED FOR ENTRY:

/s/ D. Hiatt Collins
_____
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re | ) |
| | ) |
| **NEW LIFE INTERNATIONAL,** | )   Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) |
| **dba NATIONAL COMMUNITY** | ) |
| **FOUNDATION,** | ) |
| **dba BAND ANGELS,** | ) |
| | ) |
| Debtor. | ) |
| | ) |

## EXPEDITED MOTION FOR PERMISSION TO PAY EMPLOYEE BENEFITS, TAXES, AND RELATED EXPENSES

Comes now New Life International ("NLI" or "Debtor"), the Debtor and Debtor-in-Possession herein, and respectfully moves this Court pursuant to Local Rules 2081-1 and 9075-1 on an expedited basis for permission to pay prepetition compensation, withholding taxes and related items. As grounds therefor, the Debtor respectfully represents as follows:

1.    **Expedited Relief Requested:**  Permission to pay prepetition employee benefits, withholding taxes and related items.

2.    **Reason for Urgency:**  Expedited consideration of this motion is necessary to enable the Debtor to pay employee benefits and federal and state taxes on behalf of its employees, so that the Debtor's employees will not suffer the burden of going without benefits during the administration of the case, so that the Debtor can retain valued employees, and to make the administration of this estate less burdensome.

3.    **Notice given:**  Immediately upon entry of an Order setting an expedited hearing on this Motion, the Motion and proposed Order granting same will be served upon the United States Trustee, the Debtor's known secured creditors, and the 20 largest unsecured creditors of Debtor by electronic mail, facsimile, or telephone (where known) and by first class mail.

## EXHIBIT C

Further, in compliance with LBR 2081-1(b), Debtor, through counsel, notified the U. S. Trustee on the morning of December 30, 2013 before this case was filed, of its anticipated filing, and had preliminary discussions as to the date and time of a hearing on Debtor's First Day Motions. It provided a copy of this Motion and proposed Order by electronic mail the evening of December 31, 2013, which is over seven (7) days before the requested hearing date and time. Thus, adequate notice has been given to the U. S. Trustee.

4. **Suggestion for hearing**: Movant suggests that the hearing on this motion be set for 10:00 A.M., Tuesday, January 7, 2014.

5. **Statements in support of motion**: Further statements are below.

## BACKGROUND AND JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which this Court has the authority to enter final and dispositive orders and judgments. The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. § 105.

7. On December 31, 2013 (the "Petition Date"), Debtor filed its voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor was continued, and remains, in possession of its property as Debtor-in-Possession, and is continuing to operate its business and manage its properties as such. No trustee has been appointed in the above-captioned case (the "Chapter 11 Case"). No official creditors' committee been formed.

8. New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the

2

State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act. Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

9.      NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI. NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries: World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC. All of the majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

10.      NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from other real estate and operating entities. The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

11.      Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP"). CGAs and ChIPs are recognized under the Internal Revenue Code. In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state. Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the

3

single or joint lifetime of each donor.  Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

12.     NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3).  In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

13.     All of NLI's eight (8) employees are salaried, and NLI pays its employees twice a month, nominally on the 15th and the last day of the month.  If the 15th or the last day of the month falls on a weekend or a holiday, NLI pays its employees on the last workday prior to the holiday or weekend.  Thus, NLI has two pay periods per month, one starting on the first day of the month and ending on the 15th, and another starting on the 16th of the month and ending the last day of the month.  For example, the pay period that commenced on December 1 ended on December 15, 2013, a Sunday, and employees were paid for that pay period on the preceding Friday, December 13, 2013. The pay period that commenced December 16 ends on December 31, 2013, a Tuesday, and employees were paid for that pay period early, on Monday, December 23, 2013 to accommodate the Debtor's filing of its petition.  Of course, NLI withholds and pays required federal income withholding taxes from employees' compensation.  The next pay period begins on Wednesday, January 1, 2014.

14.     The Debtor reimburses its employees for mileage when employees use their personal vehicles for company business.  At the time of filing of this Application, the Debtor anticipates that it will owe prepetition mileage reimbursement.

4

15. The Debtor may be required to pay to or on behalf of its employees accrued vacation or sick leave not taken, garnishments, mileage reimbursement, workers' compensation, flexible spending account, or other compensation or benefits that accrued prepetition but have not yet been paid.

16. None of the employees, pursuant to the authority sought by this motion, will be paid more than $11,725.00, the maximum amount allowable as a priority claim under 11 U.S.C. § 507(a)(4) and (5), for cumulative prepetition wages, benefits and expenses.

17. Debtor pays unemployment taxes to the States of Tennessee and federal unemployment taxes on a bi-monthly basis. The payments for which the Debtor seeks authority would include amounts for services that were performed prepetition and amounts for customary employment taxes.

## **RELIEF REQUESTED**

18. The Debtor seeks permission to pay for the following prepetition expenses (the "Employee Expenses") as and when they become payable:

a. All state, federal and local payroll related taxes, deductions and withholdings pertaining to wages and salaries that arose prior to the Petition Date, including any valid garnishments;

b. Worker's compensation and other benefits and claims of employees, accrued vacation or sick leave not taken, garnishments, flexible spending account reimbursement, or mileage reimbursement, which arose or accrued prior to the Petition Date; and

c. Health insurance premiums under insurance policies pertaining thereto, together with all costs and expenses incurred in connection with the servicing and

5

processing of such claims which arose or accrued prior to the Petition Date, to the extent not already paid by the Debtor.

19.     The Debtor does not seek permission to pay any compensation to employees pursuant to any severance agreements.  The Debtor does not seek permission to pay amounts pursuant to any agreements pertaining to executive benefits.

20.     The Court has authority to grant the relief requested pursuant to 11 U.S.C. § 105. Pursuant to 11 U.S.C. § 507(a)(4), claims of employees for prepetition wages, salaries, vacation and sick leave pay are accorded priority and payment.  Except as noted above, all of the amounts the Debtor seeks to pay to employees would be priority claims under § 507(a)(4).

21.     11 U.S.C. § 507(a)(8)(A), (C) and (D) grant priority status to prepetition claims of governmental units for taxes measured on income, taxes required to be collected or withheld or employment taxes on wages.

22.     The employees are essential to the ongoing operations of the Debtor's business, and are absolutely critical to the success of Debtor's reorganization efforts.  Payment of the Employee Expenses will not be prejudicial to creditors.  To the contrary, payment of the Employee Expenses will ensure continued, uninterrupted operations of the Debtor's business, and will contribute to the value of the Debtor's estate.  The payment of the Employee Expenses will ensure the success of Debtor's efforts in seeking Chapter 11 relief for the benefit of the creditors of the estate.

23.     In support of this Motion, the Debtor relies upon and incorporates by this reference the Verified Statement of Mr. Robby McGee, President of Debtor, filed simultaneously herewith.

24.     A proposed Order granting this motion is attached hereto as **Exhibit A**.

6

WHEREFORE, the Debtor respectfully prays as follows:

A.      That the Court enter an Order granting this Motion, on an expedited basis, permitting the Debtor to pay prepetition benefits, employee taxes and reimbursement of prepetition employee business expenses to the described employees.

B.      That the Court enter its Order *nunc pro tunc* December 31, 2013.

C.      That the Court grant such other, further and general relief as is just.

Respectfully submitted this 31st day of December 2013.

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

7

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re | ) |
| | ) |
| **NEW LIFE INTERNATIONAL,** | )   Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) |
| **dba NATIONAL COMMUNITY** | ) |
| **FOUNDATION,** | ) |
| **dba BAND ANGELS,** | ) |
| | ) |
| Debtor. | ) |
| | ) |

## EXPEDITED ORDER GRANTING EXPEDITED MOTION FOR PERMISSION TO PAY EMPLOYEE BENEFITS, TAXES, AND RELATED EXPENSES

This matter came on for hearing on January 7, 2014, upon the Expedited Motion filed by New Life International, Debtor and Debtor-in-Possession ("Debtor"), for permission to pay prepetition employee benefits, withholding taxes and related items.

At the hearing, the following appearances were made:  Mr. G. Rhea Bucy, Mr. Thomas H. Forrester, Ms. Linda W. Knight and Mr. D. Hiatt Collins, counsel for Debtor.   Debtor introduced into evidence the Verified Statement of Mr. Robby McGee, President of Debtor.  The Court also heard the testimony of Mr. McGee.

AND IT APPEARING that the Court has considered the Motion, the proceedings and evidence introduced at the hearing, including the Verified Statement and testimony of Mr. McGee, and the entire record in this matter, and holds that the Motion is well-taken and that good and sufficient grounds therefor are shown;

IT FURTHER APPEARING that sufficient notice hereof was given, and that no further notice hereof or hearing hereon is necessary;

IT FURTHER APPEARING that emergency consideration of the Motion is appropriate and necessary under the circumstances;

It is, therefore, ORDERED, ADJUDGED AND DECREED as follows:

1.      The Motion is granted in all respects.

2.      Without limiting the generality of the foregoing, Debtor is hereby authorized to honor and pay all prepetition benefits, withholding taxes, deductions, and related items, as they are described in the Motion, in the same manner as it did in the ordinary course of business prior to the commencement of this Chapter 11 case, including:

 a. All state, federal and local payroll related taxes, deductions and withholdings pertaining to wages and salaries that arose prior to the Petition Date, including any valid garnishments;

 b. Worker's compensation and other benefits and claims of employees, accrued vacation or sick leave not taken, garnishments, flexible spending account reimbursement, or mileage reimbursement, which arose or accrued prior to the Petition Date;  and;

 c. The health claims and any and all premiums on insurance policies pertaining thereto, together with all costs and expenses incurred in connection with the servicing and processing of such claims which arose or accrued prior to the Petition Date.

3.      Neither this Order, nor any payments made by Debtor under this Order, shall be deemed to change the classification or priority of any claim or in any way change the rights or create new rights of any employee or other person, including, without limitation, the creation of any right to payment entitled to administrative expense priority under 11 U.S.C. §§ 503 and 507.

4. This Order does not authorize the Debtor to pay any employee more than $11,725.00, the maximum amount allowable as a priority claim under 11 U.S.C. § 507(a)(4) and (5), for cumulative prepetition wages, benefits and expenses.

Enter *nunc pro tunc* December 31, 2013.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

APPROVED FOR ENTRY:

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

</div>

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

<div align="center">

**EXPEDITED MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 366(A) AND 507**
**(I) FOR AUTHORITY TO PAY PREPETITION UTILITY CLAIMS**
**(II) TO DETERMINE ADEQUACY OF ASSURANCE OF PAYMENT**
**FOR FUTURE SERVICE FROM UTILITIES AND**
**(III) TO ESTABLISH PROCEDURES FOR DETERMINING**
**REQUESTS FOR ADDITIONAL ASSURANCE**

</div>

Comes now New Life International ("NLI" or "Debtor"), and files this Expedited Motion (I) for authority to pay prepetition utility claims, (II) determine the adequacy of assurance of payment for future service from utilities, and (III) establish procedures for determining requests for additional adequate assurance.

This is a Motion of the type described in LBR 2081-1(a)(6).

As grounds therefor, and in compliance with LBR 9075-1 and 2081-1, Debtor respectfully represents as follows:

1.      **Expedited relief requested**:  (I) Authority to pay prepetition utility claims, (II) Determine adequacy of assurance of payment for future utility service, and (III) Establish procedures for determining requests for additional assurance from utilities.

2.      **Reason for urgency**:  Expedited consideration of this Motion is necessary to enable Debtor timely to comply with the requirements of 11 U.S.C. § 366 for the benefit of Debtor's utility providers.

<div align="center">

**EXHIBIT D**

</div>

3.      **Notice given**:  Immediately upon entry of an Order setting an expedited hearing on this Motion, the Motion and proposed Order granting same will be served upon the United States Trustee, the Debtor's known secured creditors, the 20 largest unsecured creditors of Debtor, and the affected Utility Companies by electronic mail, facsimile, or telephone (where known) and by first class mail.

Further, in compliance with LBR 2081-1(b), Debtor, through counsel, notified the U. S. Trustee on the morning of December 30, 2013 before this case was filed, of its anticipated filing, and had preliminary discussions as to the date and time of a hearing on Debtor's First Day Motions.  It provided a copy of this Motion and proposed Order by electronic mail the evening of December 31, 2013, which is over seven (7) days before the requested hearing date and time. Thus, adequate notice has been given to the U. S. Trustee.

4.      **Suggestion for hearing**:  Movant suggests that the hearing on this motion be set for 10:00 A.M., Tuesday, January 7, 2014.

5.      **Statements in support of motion**:  Further statements are below.

## BACKGROUND AND JURISDICTION

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which this Court has the authority to enter final and dispositive orders and judgments.  The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. §§ 105, 366, 503 and 507.

7.      On December 31, 2013 (the "Petition Date"), Debtor filed its voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code").  Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor was continued, and remains, in possession of its property as

Debtor-in-Possession, and is continuing to operate its business and manage its properties as such. No trustee has been appointed in the above-captioned case (the "Chapter 11 Case"). No official creditors' committee been formed.

8.      New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act. Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

9.      NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI. NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries: World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC. All of the majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

10.     NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from other real estate and operating entities. The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

3

11.     Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP").  CGAs and ChIPs are recognized under the Internal Revenue Code.  In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state.  Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the single or joint lifetime of each donor.  Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

12.     NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3).  In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

### RELIEF REQUESTED

13.     Before this case was filed, Debtor contracted for utility services rendered by various utility companies at its facilities.  By this motion, Debtor seeks an order (i) authorizing payment of prepetition utility claims, (ii) determining the adequacy of Debtor's proposal for assurance of payment of future utility services, and (iii) establishing procedures for determining requests for additional adequate assurance.

14.     More specifically, Debtor moves for immediate entry of an order:

A.      Authorizing Debtor to pay amounts due the Utility Companies (as defined below) for utility services rendered prepetition;

4

B.     Deeming that Debtor's payment for the prepetition services rendered by the respective Utility Companies, and retention of unused prepetition security deposits, if any, is adequate assurance of payment for future services within the meaning of 11 U.S.C. § 366, subject only to the additional procedures described herein;

C.     Providing that any Utility Company seeking adequate assurance in the form of a deposit or other security be required to make a request in writing, setting forth the location to which utility services were provided, so that the request is actually received by Debtor within 25 days after the date of entry of the Order granting this Motion;

D.     Allowing Debtor to provide additional adequate assurance without further notice, hearing or order if Debtor deems that the written request is reasonable, and requiring Debtor to file a Motion for Determination of Adequate Assurance of Payment (the "Determination Motion") and set such motion for hearing (the "Determination Hearing") if a Utility Company timely and properly requests from Debtor additional adequate assurance that the Debtor believes is unreasonable;

E.     Providing that Utility Companies are deemed to have adequate assurance of payment under 11 U.S.C. § 366 until this Court enters a final order holding otherwise;

F.     Providing, if any Utility Companies obtain approval of additional adequate assurance as a result of any Determination Motion or Hearing, that any postpetition payments of prepetition amounts owed to such Utility Companies made pursuant to this Motion be deducted from any such deposit, or that any payments of such prepetition amounts be refunded to Debtor;

G.     Providing that any Utility Company that does not timely request in writing additional adequate assurance pursuant to the above procedures be deemed to have adequate assurance under 11 U.S.C. § 366;

5

H.     Authorizing Debtor to add Utility Companies subsequently discovered during the course of this case; and

I.     Prohibiting any Utility Company deemed to have adequate assurance pursuant to the procedures described above from altering, refusing or discontinuing services to Debtor.

## BASIS FOR RELIEF

15.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 366(a), 503 and 507.

16.     Utility services are essential to Debtor's ability to sustain its operations during the Chapter 11 case.  An interruption of utility service would severely disrupt the Debtor's operation of its business.

17.     In the normal conduct of its business, Debtor uses gas, water, electric, telephone, and other services provided by utility companies (the "Utility Companies").  Utility Companies currently used by Debtor, along with account numbers, are listed in **Exhibit A**, attached hereto and incorporated herein by this reference.  The Utility Companies will be notified of this Motion and the associated Proposed Order as described in Paragraph 3, above.

18.     In the normal course of its operations, Debtor uses a standard cash management system for payment of the Utility Companies for services used by the Debtor.

19.     Debtor paid its utility bills in the ordinary course of business prior to the filing of this Case.  All utility bills received prepetition were paid prepetition.  Thus, the only prepetition services for which payment has not been made are those that had not been billed as of the petition date, i.e., the current billing cycle.

20.     11 U.S.C. § 366 governs the rights and obligations of the Utility Companies as providers of utility services to the Debtor.  Pursuant to § 366, the Utility Companies "may alter, refuse, or discontinue service if neither the trustee nor the debtor, within thirty (30) days after the date of the order for relief, furnishes adequate assurance of payment in the form of a deposit or other security, for service after such date."  The 30-day period will expire on January 30, 2014, unless extended.

21.     Debtor submits that payment for the services rendered by the Utility Companies prepetition, along with the administrative expense priority provided pursuant to 11 U.S.C. §§ 503(b) and 507(a)(1), adequately assure payment to providers of utility services without the need for deposits or other security.  Debtor has, and anticipates that it will continue to have, sufficient funds from operations to make timely payments for all postpetition utility services.

22.     An interruption of utility service would severely disrupt Debtor's business operations.  In contrast, the Utility Companies will not be prejudiced by the continuation of such service because they will be paid for all amounts they are owed prepetition, and will have adequate assurance that they will be paid all postpetition utility charges as they become due. When a Chapter 11 debtor has timely paid its utility bills prior to the Petition Date, the payment of any amounts owing as of the Petition Date and the administrative expense priority afforded by 11 U.S.C. §§ 503(b)(1) and 507(a)(1) should constitute adequate assurance of payment.  No additional deposit or other security should be required.

23.     Because uninterrupted utility service is vital to the continued operation of Debtor's business and the safety of its employees, and consequently, to the success of the Chapter 11 case, the relief requested herein is necessary and in the best interests of Debtor, its

7

estate and creditors.  It ensures that Debtor's operations will not be disrupted and also provides

Utility Companies and Debtor an orderly, fair procedure for determining "adequate assurance."

24.     For these reasons, Debtor requests that the Court enter an Order providing that

any Utility Company served with a copy of the order granting this motion is subject to the Order

and is afforded 25 days from the date of such service to make a request, if any, to the Debtor for

additional adequate assurance.

25.     Such a procedure would avoid the need for requests to modify or amend any

Order granting this Motion, yet still afford any such subsequently identified Utility Companies

their due process rights.

26.     Debtor will serve promptly the entered Order upon each Utility Company.

27.     In support of this Motion, Debtor relies upon, and incorporates by reference, the

Verified Statement of Mr. Robby McGee, president of the Debtor, filed simultaneously herewith.

28.     A proposed Order granting this Motion is attached hereto as **Exhibit B**.

**WHEREFORE**, Debtor respectfully prays as follows:

A.     That the Court grant this Expedited Motion and enter, on an expedited basis, the

proposed Order submitted simultaneously herewith, approving Debtor's proposed payment for

prepetition utility services, determining the adequacy of assurance of payment for postpetition

utility services, and establishing procedures for determining requests for additional assurance.

B.     That the proposed Order be entered *nunc pro tunc* December 31, 2013.

C.     That the Court grant such other, further and general relief as is just.

Respectfully submitted this 31st day of December 2013.

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave., South
Nashville, TN 37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

9

| Name of Utility | Address | Account Number |
|---|---|---|
| Comcast | P O Box 105184<br>Atlanta, GA 30348-5184 | XXXXX0-02-8 |
| DeltaCom, Inc.<br>(Earthlink) | P O Box 2252<br>Birmingham, AL 35246-1058 | XXXXX2956 |
| Elk River Public Utility<br>District | P O Box 970<br>Tullahoma,TN 37388-0970 | XXXXX7778<br>XXXXX8120 |
| Monteagle Public Utility | P O Box 127<br>Monteagle, TN 37356 | XXXXX0-001<br>XXXXX0-001 |
| Reliant | P O Box 650475<br>Dallas, TX 75265-0475 | XXXXX891-1 |
| SVEC | P O Box 31<br>South Pittsburg, TN 37380-0031 | N/A |
| Verizon Wireless | P O Box 660108<br>Dallas, TX 75266-0108 | XXXXX0005<br>XXXXX0002<br>XXXXX0006 |

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## EXPEDITED ORDER GRANTING
## EXPEDITED MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 366(A) AND 507
## (I) FOR AUTHORITY TO PAY PREPETITION UTILITY CLAIMS
## (II) TO DETERMINE ADEQUACY OF ASSURANCE OF PAYMENT
## FOR FUTURE SERVICE FROM UTILITIES AND
## (III) TO ESTABLISH PROCEDURES FOR DETERMINING
## REQUESTS FOR ADDITIONAL ASSURANCE

This matter came on for hearing on January 7, 2014 on the Expedited Motion filed by the

captioned Debtor and Debtor-in-Possession (hereinafter, "Debtor"), for (I) for authority to pay

prepetition utility claims, (II) to determine adequacy of assurance of payment for future service

from utilities and (III) to establish procedures for determining requests for additional assurance

(the "Motion").

At the hearing, the following appearances were made: Mr. G. Rhea Bucy, Mr. Thomas

H. Forrester, Ms. Linda W. Knight and Mr. D. Hiatt Collins, counsel for Debtor. Debtor

introduced into evidence the Verified Statement of Mr. Robby McGee, President of Debtor. The

Court also heard the testimony of Mr. McGee.

AND IT APPEARING that the Court has considered the Motion, the proceedings and evidence introduced at the hearing, including the Verified Statement and testimony of Mr. McGee, and the entire record in this matter, and holds that the Motion is well-taken and that good and sufficient grounds therefor are shown;

AND IT, FURTHER, APPEARING that Debtor has given notice in compliance with LBR 2081-1, that no timely Objection was filed, and that no further notice hereof or hearing hereon is necessary;

AND IT, FURTHER, APPEARING that emergency consideration of the Motion is appropriate and necessary;

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1.      The Motion is hereby granted, as more particularly set forth hereinafter.

2.      Debtor is hereby authorized to pay the amounts owed to the respective Utility Companies for services rendered before the Petition Date, December 31, 2013.

3.      Debtor shall timely pay, in accordance with its prepetition practices, all undisputed invoices for postpetition utility services rendered by the Utility Companies.  The Utility Companies are authorized to retain any unused portion of any prepetition security deposits paid by Debtor until further Order of the Court if Debtor defaults on payment for postpetition utility services.

4.      As authorized in Paragraphs 2 and 3 above, Debtor's offer of adequate assurance of payment for postpetition utility services under 11 U.S.C. § 366 (the "Offer of Adequate Assurance") consists of

        A.      Payment of the prepetition amounts owed to the Utility Companies,

        B.      Debtor's timely payment for postpetition utility services, and

2

C.      The Utility Companies' retention of any unused prepetition deposits, to be applied only upon further Order of the Court if Debtor defaults on payment for postpetition utility services.

5.      This Order is without prejudice to the rights of any of the Utility Companies to reject Debtor's Offer of Adequate Assurance described in Paragraph 4 above, and instead request adequate assurance in the form of deposits or other security from Debtor (a "Rejection").  Any Rejection must be in writing, must state the Utility Company that is rejecting Debtor's Offer of Adequate Assurance, must set forth the location (street address) for which the utility services are provided, and must specify the additional assurance sought.  A Rejection must be made so that it is **received by Debtor's counsel**, identified in this Paragraph 5, by 4:00 P.M. on January 30, 2014 (the "Rejection Deadline"), which date satisfies the 30-day period specified in 1 U.S.C. §366.  If it is not received by Debtor's counsel by that date and time, it shall be deemed an untimely and invalid Rejection.  A Rejection must be delivered as follows:

| | |
|---|---|
| If by mail, to: | Mr. G. Rhea Bucy |
| | Gullett, Sanford, Robinson & Martin, PLLC |
| | 150 Third Avenue South, Suite 1700 |
| | Nashville, TN 372021 |
| | |
| If by hand delivery, to: | Mr. G. Rhea Bucy |
| | Gullett, Sanford, Robinson & Martin, PLLC |
| | 150 Third Avenue South, Suite 1700 |
| | Nashville, TN 372021 |
| | |
| With a copy to: | rbucy@gsrm.com |

6.      If a Utility Company serves a proper and timely Rejection as provided in Paragraph 5 above:

3

A.     If Debtor believes that the timely Rejection is reasonable, Debtor is hereby authorized to enter into an agreement and comply therewith, without further notice, hearing, order or other action.

B.     If Debtor believes that the timely Rejection is unreasonable, *then*

i.     Within five (5) business days after Debtor's receipt of the Rejection, Debtor shall file an Expedited Motion for Determination of Adequate Assurance of Payment with respect to such Rejection (the "Expedited Determination Hearing"); and

ii.     a.     If Debtor files an Expedited Determination Motion, the Utility Companies are and shall be enjoined and prohibited from altering, refusing or discontinuing utility services to Debtor until further Order of the Court; or

b.     If Debtor does not file an Expedited Determination Motion, Debtor shall be deemed to have agreed to the Utility Company's Rejection and to provide the additional adequate assurance requested in the Rejection.

7.     If a Utility Company does not timely deliver a proper Rejection as provided in Paragraph 5 above, said Utility Company shall be deemed to have accepted and agreed to Debtor's Offer of Adequate Assurance, *unless* the Utility Company files a Motion under 11 U.S.C. § 366(c)(3) after the Rejection Deadline.

8.     If any Utility Company obtains additional adequate assurance in the form of a deposit or other security as a result of

A.     Negotiation with Debtor after serving a timely Rejection, or

B.     Any Expedited Determination Motion or Hearing, or

C.     Any adjudication of a Motion under 11 U.S.C. § 366(c)(3) filed pursuant to Paragraph 7 above,

4

*then* any postpetition payments of prepetition amounts owed to such Utility Companies made pursuant to this Order shall be deducted from and credited against any such deposit, or, if such adequate assurance is in the form of other security, any payments of such prepetition amounts shall be refunded to the Debtor.

9.      Debtor shall serve this Order by first-class mail, within three business days after the date of entry this Order, to the Utility Companies currently identified by the Debtor.  Debtor shall also serve this Order by fax or electronic mail upon the employee of any Utility Company who deals with Chapter 11 utility matters, for which Debtor is able to obtain such contact information.

10.     Any Utility Company not served at the time of the initial service of this Order, but subsequently identified, shall be served notice and a copy of this Order and shall have 25 days from the date of service to deliver a Rejection to the Debtor via Debtor's counsel as shown in Paragraph 5.  Such a Rejection must be received by Debtor's counsel within such 25 days, and must otherwise comply with the requirements of Paragraph 5, or else it shall be deemed an untimely and invalid Rejection.  This Order shall apply to such Utility Companies from the date of such service, subject to a later Order of the Court on an Expedited Motion for Determination, if any, or a Motion under 11 U.S.C. § 366(c)(3), if any.  Substantially contemporaneously with the service of the Notice and Order, Debtor shall file with the Court a Certificate of Service showing the Utility Companies so served.  If Debtor filed an Expedited Motion for Determination in the manner described in Paragraph 6, then any Utility Company covered by this Paragraph 10 is and shall be enjoined from altering, refusing or discontinuing services to the Debtor until further Order of the Court.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY**

---

**AS INDICATED AT THE TOP OF THE FIRST PAGE.**

APPROVED FOR ENTRY:

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

6

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

In re                    )

)

**NEW LIFE INTERNATIONAL,**   )     Case No. 13-10974-RM3-11

**dba THE NEW LIFE GROUP,**    )

**dba NATIONAL COMMUNITY**    )

**FOUNDATION,**                )

**dba BAND ANGELS,**          )

)

       Debtor.          )

)

## EXPEDITED MOTION FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS

Comes now New Life International ("NLI" or "Debtor"), Debtor and Debtor-in-Possession, and moves for an extension of the deadline to file its Schedules of Debts and Assets, Statement of Executory Contracts and Statement of Financial Affairs, through and including January 30, 2014. As grounds therefor, and in compliance with LBR 9075-1, the Debtor respectfully represents as follows:

1. **Expedited relief requested**: Sixteen (16) day extension, through and including January 30, 2014, of deadline to file Schedules and a Statement of Financial Affairs.

2. **Reason for urgency**: Expedited consideration of this motion is necessary because the initial deadline to file Schedules and Statement is very short, and the Debtor needs to know whether it will be granted the additional brief time sought.

3. **Notice given**: Immediately upon entry of an Order setting an expedited hearing on this Motion, the Motion and proposed Order granting same will be served upon the United States Trustee, the Debtor's known secured creditors, and the 20 largest unsecured creditors of Debtor by electronic mail, facsimile, or telephone (where known) and by first class mail.

## EXHIBIT E

Further, in compliance with LBR 2081-1(b), Debtor, through counsel, notified the U. S. Trustee on the morning of December 30, 2013 before this case was filed, of its anticipated filing, and had preliminary discussions as to the date and time of a hearing on Debtor's First Day Motions. It provided a copy of this Motion and proposed Order by electronic mail the evening of December 31, 2013, which is over seven (7) days before the requested hearing date and time. Thus, adequate notice has been given to the U. S. Trustee.

4. **Suggestion for hearing**: Movant suggests that the hearing on this motion be set for 10:00 A.M., Tuesday, January 7, 2014.

5. **Statements in support of motion**: Further statements are below.

## BACKGROUND AND JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which this Court has the authority to enter final and dispositive orders and judgments. The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. § 105.

7. On December 31, 2013 (the "Petition Date"), Debtor filed its voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor was continued, and remains, in possession of its property as Debtor-in-Possession, and is continuing to operate its business and manage its properties as such. No trustee has been appointed in the above-captioned case (the "Chapter 11 Case"). No official creditors' committee been formed.

8. New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the

2

State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act. Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

9.      NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI. NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries: World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC. All of the majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

10.      NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from other real estate and operating entities. The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

11.      Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP"). CGAs and ChIPs are recognized under the Internal Revenue Code. In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state. Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the

3

single or joint lifetime of each donor.  Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

12.     NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3).  In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

## RELIEF SOUGHT

13.     Debtor employs only eight (8) employees, and the number of annuities, properties, creditors, and annuitants that the Debtor must list on its Schedules and Statement of Financial Affairs is extensive.

14.     Debtor asserts that the volume of work required of these employees to complete the Schedules and Statement of Financial Affairs in the immediate future justifies Debtor's request for an extension of time to file its Schedules and Statement.

15.     Additionally, the granting of an extension will aid the Debtor in filing Schedules and a Statement that are as complete and accurate as possible, thereby benefiting all parties in interest in this case, allowing them to receive notice as soon as possible, and minimizing the need for amendments.

16.     Even though the Debtor has already begun the extensive process of gathering the necessary information to prepare and finalize the Schedules and Statement, the process is far from complete.  An additional sixteen days will provide the time to ensure accuracy of the Debtor's Schedules and Statement.

4

17.     In support of this Motion, Debtor relies upon and incorporates by this reference the Verified Statement of Mr. Robby McGee, President of Debtor, filed simultaneously herewith.

18.     A proposed Order granting this Motion is attached hereto as **Exhibit A**.

WHEREFORE, the Debtor respectfully prays:

A.     That the Court grant a 16-day extension, through and including January 30, 2014, of the deadline for filing its Schedules of Debts and Assets, Statement of Executory Contracts, and Statement of Financial Affairs, and that the Court enter such order on an expedited basis.

B.     That such Order be entered *nunc pro tunc* December 31, 2013.

C.     That the Court grant Debtor such other, further and general relief as is just.

Respectfully submitted this 31st day of December 2013.

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave., South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

5

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## EXPEDITED ORDER GRANTING EXPEDITED MOTION FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENTOF FINANCIAL AFFAIRS

This matter came on for hearing on January 7, 2014 on the Expedited Motion filed by the captioned Debtor and Debtor-in-Possession ("Debtor") for an extension of the period within which Debtor must file its Schedules of Debts and Property, Statement of Executory Contracts and Statement of Financial Affairs (collectively, the "Schedules and Statement").

At the hearing, the following appearances were made: Mr. G. Rhea Bucy, Mr. Thomas H. Forrester, Ms. Linda W. Knight and Mr. D. Hiatt Collins, counsel for Debtor. Debtor introduced into evidence the Verified Statement of Mr. Robby McGee, President of Debtor. The Court also heard the testimony of Mr. McGee.

AND IT APPEARING that the Court has considered the Motion, the proceedings and evidence introduced at the hearing, including the Verified Statement and testimony of Mr. McGee, and the entire record in this matter, and holds that the Motion is well-taken and that good and sufficient grounds therefor are shown;

AND IT, FURTHER, APPEARING that sufficient notice hereof was given, and that no timely objection was filed, and that no further notice hereof or hearing hereon is necessary;

AND IT, FURTHER, APPEARING that emergency consideration of the Motion is appropriate and necessary;

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1.     The Expedited Motion is in all respects GRANTED; and

2.     Without limiting the generality of the foregoing, the time within which the Debtor must file its Schedules and Statement be, and is hereby, extended to and including January 30, 2014.

---

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

---

APPROVED FOR ENTRY:

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN  37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974-RM3-11 |
| **dba THE NEW LIFE GROUP,** | ) | |
| **dba NATIONAL COMMUNITY** | ) | |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## VERIFIED STATEMENT OF ROBBY MCGEE IN SUPPORT OF
## FIRST DAY MOTIONS

Robby McGee, under penalty of perjury, states as follows:

1.      I am, and at all times relevant hereto was, over eighteen (18) years of age.  I am the President of New Life International ("NLI" or "Debtor").  In that capacity, I have intimate knowledge of Debtor's day-to-day operations and financial affairs.

2      Except as otherwise indicated, all facts set forth in this Verified Statement are based upon my personal knowledge, my review of the relevant documents, or my opinion, based upon my experience and knowledge of Debtor's operations and financial conditions.  If I were called to testify, I could and would testify competently to the facts set forth herein.  I am authorized by Debtor to submit this Verified Statement and make the statements herein.  This Verified Statement is given in support of the following Motions (the "First Day Motions"), which were filed concurrently herewith in the above-referenced Chapter 11 case on December 31, 2013:

A.      Expedited Motion for Permission to Maintain and Use Existing Bank Accounts, Cash Management System and Business Forms (the "Bank Accounts Motion");

## EXHIBIT F

B. Expedited Motion for Permission to Pay Prepetition Benefits, Taxes, and Related Expenses (the "Employee Motion");

C. Expedited Motion Pursuant to 11 U.S.C. §§ 105(a), 366(a) and 507 (I) for Authority to Pay Prepetition Utility Claims, (II) to Determine Adequacy of Assurance of Payment for Future Service from Utilities and (III) to Establish Procedures for Determining Requests for Additional Assurance (the "Utilities Motion");

D. Expedited Motion for Extension of Time to File Schedules and Statement of Financial Affairs (the "Extension Motion"); and

E. Debtor's Expedited Motion to Limit Subsequent Notices and Remove Parties from Full Matrix (the "Notice Motion").

## I. BACKGROUND INFORMATION

3. New Life International ("NLI") was originally incorporated under the name "World Bible Society" on February 28, 1979, as a nonprofit corporation under the laws of the State of Tennessee. According to its charter, as amended, NLI is a public benefit corporation, and a religious corporation, within the meaning of the Tennessee Nonprofit Corporation Act. Among other things, NLI's charter authorizes NLI to solicit, receive and expend the proceeds of fees, donations, grants, bequests and legacies in furtherance of its corporate purposes.

4. NLI includes National Community Foundation, The New Life Group, and Band Angels, all unincorporated divisions of NLI. NLI also conducts operations and implements its investment decisions via the following wholly-owned subsidiaries: World in Need, LLC, New Life Property Holdings, Inc., New Life Property Holdings II, Inc., New Life Holdings, Inc. (and its wholly-owned subsidiary, 131 Third Avenue, LLC), New Life Cabins, Inc., New Life Development, Inc., Northgate Holdings, Inc. and New Life Digital Media, LLC. All of the

2

majority-owned subsidiaries, with the exception of 131 Third Avenue, LLC and New Life Digital Media, LLC, are non-profit organizations.

5.     NLI's sources of revenue include donations of goods, money and other property, investment earnings, sale of Christian-themed merchandise and earnings from other real estate and operating entities.   The real estate and operating entity operations include rental of commercial and residential property, investment in a development property and investment in a compact disc replicating company.

6.     Since 1997, a decided majority of the donations received by NLI have come in transactions in which NLI issued to the donor either a charitable gift annuity ("CGA"), or a bargain-sale installment note ("ChIP").   CGAs and ChIPs are recognized under the Internal Revenue Code.   In addition, most states recognize CGAs and ChIPs, although the regulatory treatment of them varies widely from state to state.   Under gift annuity agreements, NLI receives certain amounts partly in exchange for obligations to pay certain fixed installments during the single or joint lifetime of each donor.   Under charitable bargain sale obligations, when the seller has elected to be paid pursuant to the Installment Method in Section 453 of the Internal Revenue Code, NLI has received certain amounts partly in exchange for obligations to pay certain fixed installments during a fixed period of time, generally ten to twenty years.

7.     NLI has been granted an exemption under Internal Revenue Code Section 501(c)(3).   In addition, the corporation qualifies for the charitable contribution deduction under Section 170(B)(1)(A) and has been classified as an organization that is not a private foundation under Section 509(a)(2).

## II.  STATEMENTS IN SUPPORT OF EXPEDITED MOTION FOR PERMISSION TO MAINTAIN AND USE EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, AND BUSINESS FORMS

8.      As of the Petition Date, Debtor maintained the following bank accounts:

A.      A local operating account at Pinnacle Bank in Nashville.

B.      A local payroll account at Pinnacle Bank in Nashville.

C.      Two local depository accounts at Pinnacle Bank in Nashville.

D.      A local depository account at Pinnacle Bank in Nashville in the name of New Life International d/b/a The New Life Group.

9.      Debtor's income is deposited into the various accounts, which Debtor uses to pay its ordinary trade vendors, its landlord, debt service, property maintenance expenses, taxes, employment and payroll-related expenses, and generally all of its disbursements.

10.     In my opinion, on behalf of the Debtor:

A.      Debtor should be allowed to use its pre-existing bank accounts as described above, and not be required to close each prepetition bank account as of the Petition Date or open new postpetition bank accounts with checks imprinted with "Debtor-in-Possession."

B.      That compliance with such requirements would unnecessarily disrupt Debtor's business, impair Debtor's efforts to stabilize operations at a critical stage of this case, and would not confer any benefit on those dealing with Debtor.

C.      That maintaining the existing accounts is vitally important to Debtor because a large portion of the funds that it receives and disburses are transferred electronically. The closing of existing accounts and opening of new accounts would cause confusion and disruption, and materially slow the receipt and disbursement of funds at this critical time in

4

Debtor's business.  In addition, the Debtor has recently transferred its bank accounts to Pinnacle Bank, a depository approved by the Office of the United States Trustee, Region 8, and opening a second new group of accounts would cause unnecessary disruption to the Debtor's operation.

D.     That all parties in interest will be served by preserving business continuity and avoiding the disruption and delay to Debtor's business activities that would necessarily result from closing the accounts and opening new accounts.

E.     That it is in the best interests of the Debtor that the Court deem Debtor's prepetition bank accounts to be Debtor-in-Possession accounts, and authorize their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as during the pre-petition period.

F.     That it is in the best interests of the Debtor for the Debtor to continue to use its correspondence and business forms, such as purchase orders, checks, letterhead, envelopes, insurance and reimbursement forms, substantially in the forms existing immediately prior to the Petition Date, without reference to its status as Debtor-in-Possession.  Both Debtor and the parties with which it regularly deals depend on the uniformity of these forms to conduct their transactions with maximum efficiency.  Substantial time and expense would be required to print new business forms.  Furthermore, use of new forms may slow the pace of Debtor's everyday transactions with parties which are accustomed to Debtor's current forms.

G.     That if Debtor needs to purchase new business forms during the pendency of these cases, such forms not be required to include a legend referring to the Debtor as Debtor-in-Possession.

H.     That continuation of its prepetition accounts, cash management system and business forms will not negatively affect the rights of any creditors or parties in interest.

5

I.        That the granting of this Motion will not affect the reports and information that Debtor is required to provide, or otherwise affect its conduct as Debtor-in-Possession.

J.        That if Debtor is not permitted to maintain and utilize its existing accounts, cash management system and business forms prejudice will result, including (i) disruption in Debtor's ordinary financial affairs and business operations, diverting it from its duties as Debtor-in-Possession; (ii) delay in the administration of Debtor's estate; and (iii) cost to the estate to set up new cash and deposit systems, open new accounts, print new business forms, and print new checks.

### III.  STATEMENTS IN SUPPORT OF EXPEDITED MOTION FOR PERMISSION TO PAY PREPETITION BENEFITS, TAXES, AND RELATED EXPENSES

11.      All of NLI's eight (8) employees are salaried, and NLI pays its employees twice a month, nominally on the 15th and the last day of the month.  If the 15th or the last day of the month falls on a weekend or a holiday, NLI pays its employees on the last workday prior to the holiday or weekend.  Thus, NLI has two pay periods per month, one starting on the first day of the month and ending on the 15th, and another starting on the 16th of the month and ending the last day of the month.  For example, the pay period that commenced on December 1 ended on December 15, 2013, a Sunday, and employees were paid for that pay period on the preceding Friday, December 13, 2013. The pay period that commenced December 16 ends on December 31, 2013, a Tuesday, and employees were paid for that pay period early, on Monday, December 23, 2013 to accommodate the Debtor's filing of its petition.  Of course, NLI withholds and pays required federal income withholding taxes from employees' compensation.  The next pay period begins on Wednesday, January 1, 2014.

12.     The Debtor reimburses its employees for mileage when employees use their personal vehicles for company business.  At the time of filing of this Application, the Debtor anticipates that it will owe prepetition mileage reimbursement.

13.     The Debtor may be required to pay to or on behalf of its employees accrued vacation or sick leave not taken, garnishments, mileage reimbursement, workers' compensation, flexible spending account, or other compensation or benefits that accrued prepetition but have not yet been paid.

14.     None of the employees, pursuant to the authority sought by this motion, will be paid more than $11,725.00, the maximum amount allowable as a priority claim under 11 U.S.C. § 507(a)(4) and (5), for cumulative prepetition wages, benefits and expenses.

15.     Debtor pays unemployment taxes to the States of Tennessee and federal unemployment taxes on a bi-monthly basis.  The payments for which the Debtor seeks authority would include amounts for services that were performed prepetition and amounts for customary employment taxes.

16.     In my opinion, on behalf of Debtor:

A.     The employees are essential to the ongoing operations of the Debtor's business, and are absolutely critical to the success of Debtor's reorganization efforts.  Payment of the Employee Expenses will not be prejudicial to creditors.  To the contrary, payment of the Employee Expenses will ensure continued, uninterrupted operations of the Debtor's business, and will contribute to the value of the Debtor's estate.  The payment of the Employee Expenses will ensure the success of Debtor's efforts in seeking Chapter 11 relief for the benefit of the creditors of the estate.

**IV. STATEMENTS IN SUPPORT OF EXPEDITED MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 366(A) AND 507 (I) FOR AUTHORITY TO PAY PREPETITION UTILITY CLAIMS (II) TO DETERMINE ADEQUACY OF ASSURANCE OF PAYMENT FOR FUTURE SERVICE FROM UTILITIES AND (III) TO ESTABLISH PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE**

17.     Before this case was filed, Debtor contracted for utility services rendered by various utility companies.

18.     In the normal conduct of its business, Debtor uses gas, water, electric, telephone, and other services provided by utility companies (the "Utility Companies").  Utility Companies currently used by Debtor, along with account numbers, are listed in **Exhibit A**, attached to the Utilities Motion and incorporated herein by this reference.  The Utility Companies will be notified of this Motion and the associated Proposed Order as described in Paragraph 3 of the Utilities Motion.

19.     In the normal course of its operations, Debtor uses a standard cash management system for payment of the Utility Companies for services used by the Debtor.

20.     Debtor paid its utility bills in the ordinary course of business prior to the filing of this Case.  All utility bills received prepetition were paid prepetition.  Thus, the only prepetition services for which payment has not been made are those that had not been billed as of the petition date, i.e., the current billing cycle.

21.     In my opinion, on behalf of Debtor:

    A.     Utility services are essential to Debtor's ability to sustain its operations during the Chapter 11 case.  An interruption of utility service would severely disrupt the Debtor's operation of its business.

    B.     Payment for the services rendered by the Utility Companies prepetition, along with the administrative expense priority provided pursuant to 11 U.S.C. §§ 503(b) and

507(a)(1), adequately assure payment to providers of utility services without the need for deposits or other security. Debtor has, and anticipates that it will continue to have, sufficient funds from operations to make timely payments for all postpetition utility services.

C. An interruption of utility service would severely disrupt Debtor's business operations. In contrast, the Utility Companies will not be prejudiced by the continuation of such service because they will be paid for all amounts they are owed prepetition, and will have adequate assurance that they will be paid all postpetition utility charges as they become due.

## V. STATEMENTS IN SUPPORT OF EXPEDITED MOTION FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS

24. Debtor employs only eight (8) employees, and the number of annuities, properties, creditors, and annuitants that the Debtor must list on its Schedules and Statement of Financial Affairs is extensive.

25. In my opinion, on behalf of Debtor:

A. The volume of work required of these employees to complete the Schedules and Statement of Financial Affairs in the immediate future justifies Debtor's request for an extension of time to file its Schedules and Statement.

B. Additionally, the granting of an extension will aid the Debtor in filing Schedules and a Statement that are as complete and accurate as possible, thereby benefiting all parties in interest in this case, allowing them to receive notice as soon as possible, and minimizing the need for amendments.

C. Even though the Debtor has already begun the extensive process of gathering the necessary information to prepare and finalize the Schedules and Statement, the process is far from complete. An additional sixteen days will provide the time to ensure accuracy of the Debtor's Schedules and Statement.

9

## VI. STATEMENTS IN SUPPORT OF DEBTOR'S EXPEDITED MOTION TO LIMIT SUBSEQUENT NOTICES AND REMOVE PARTIES FROM FULL MATRIX

26.     Debtor will file a matrix that includes all parties required (or potentially required) to receive notice under Fed. R. Bankr. P. 2002 (the "Full Matrix"). The Full Matrix consists of several hundred parties to various types of contracts with Debtor, including holders of annuity contracts, holders of promissory notes, as well as ordinary course creditors and other interested parties.

27.     In my opinion, on behalf of Debtor:

A.     Service to the entire Full Matrix, even with electronic service, will be extremely costly and burdensome.

B.     The interests of economy to Debtor's estate will be served, without harm to the interests of creditors or other interested parties, by the limited notice and service of documents, pursuant to Fed. R. Bankr. P. 2002, to the following, as may be amended from time to time: (i) the Debtor; (ii) counsel for the Debtor; (iii) the twenty (20) largest unsecured creditors of the Debtor *or* members of the Official Unsecured Creditors Committee if and when such a committee is established; (iii) counsel for the Official Unsecured Creditors Committee if and when such counsel is retained; (v) the U.S. Trustee; (vi) all secured creditors or their counsel; (vii) Debtor's financial consultant; (viii) counsel, creditors and other interested parties who have heretofore or shall hereafter file a request to receive notice under Fed. R. Bankr. P. 2002(g); (ix) the appropriate regulatory official for each state in which Debtor conducts business; and, (x) parties entitled to notice under Fed. R. Bankr. P. 2002(j) (the "Limited Service List").

C.     Any party on the Limited Service List that requests electronic service through the Court's CM/ECF system will be given notice in accordance with the Court's

10

procedures for such electronic notice and no further or additional notice to such parties shall be required.

D.      Any party that will be directly affected by any proposed action or filing with the Court will be given notice of that particular action or filing at Debtor's last known address for such party or such address as the party provides to Debtor, in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, whether or not such party is included on the Limited Service List.

E.      Notice will not be limited for any notices regarding plan confirmation; motions and orders regarding dismissal or conversion; motions and orders regarding the appointment of a trustee; or deadlines for filing claims.

F.      Any party with an interest in the case may file a request for notices under the Federal Rules of Bankruptcy Procedure and, upon the filing of such a request, shall be added to the Limited Service List.

G.      Debtor is a party to certain contracts with individuals, generally referred to as "Donor Advised Contracts" and "Family Foundation Contracts." These contracts are similar to one another, and are generally described as follows:  In past years, individual donors made contributions to Debtor under either of these types of contracts.  For example, Mr. Donor made a $100,000.00 contribution.   Under federal tax law, Mr. Donor was entitled to take a full $100,000.00 charitable deduction from his income tax return for the year in which the contribution was made.  He has no further legal or equitable interest in the funds that he donated. The funds are not segregated.  The "account" attributed to Mr. Donor is only a bookkeeping entry and is not a liability of Debtor.  All of the contributions legally belong to Debtor from and after the time they are made.  Debtor is entitled to contribute the available funds (or income from

11

the investment of such funds), in the exercise of its own judgment, in such a way as to further Debtor's Christian missions. However, Mr. Donor was allowed to advise or suggest to Debtor how he would like for Debtor to use the funds (or income therefrom). The final decision as to the use of these funds is Debtor's; Debtor is not required to comply with Mr. Donor's suggestion or advice.

H.     Absent further order of the Court, Debtor is not authorized to make charitable donations and believes that it is unlikely that it will be able to make donations in the future. It does not seem likely that the results of the orderly liquidation of the company's affairs will produce an excess of assets above that which is required to satisfy the claims of creditors, including the CGAs and ChIPs. Hence, the concept of donor advice is moot. Since donors can no longer make suggestions or give advice to Debtor as to the use of donated funds, and Debtor is the full outright owner of the assets, donors under Donor Advised Contracts and Family Foundation Contracts are neither creditors nor parties in interest in this case, should be removed from the Full Matrix, and should receive no further notices or documents in this case unless they specifically request to do so.

Verified statement signed under penalty of perjury, December 31, 2013.

/s/ Robby McGee
Robby McGee

*Randal S. Mashburn* (signature)

Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 1/2/2014

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

In re )
)
**NEW LIFE INTERNATIONAL,** ) Case No. 13-10974-RM3-11
**dba THE NEW LIFE GROUP,** )
**dba NATIONAL COMMUNITY** )
**FOUNDATION,** )
**dba BAND ANGELS,** )
)
Debtor. )
)

## EXPEDITED ORDER SETTING EMERGENCY HEARING ON FIRST DAY MOTIONS

This matter is before the Court upon the Motion of the above-referenced Debtor and Debtor-in-Possession ("Debtor") to limit and shorten notice and set an emergency hearing on certain expedited motions, identified below (the "First Day Motions").

AND IT APPEARING that the Motion is well-taken and that good and sufficient cause therefor is shown,

AND IT, FURTHER, APPEARING that adequate and sufficient notice thereof has been given and that no further notice hereof or hearing hereon is necessary,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. The following First Day Motions shall be heard on an emergency basis on January 7, 2014, at 10:00 a.m. in Courtroom 1, United States Bankruptcy Court, 701 Broadway, Nashville, Tennessee:

A. Expedited Motion for Permission to Maintain and Use Existing Bank Accounts, Cash Management System and Business Forms (the "Bank Accounts Motion");

## EXHIBIT G

B.        Expedited Motion for Permission to Pay Prepetition Benefits, Taxes, and

Related Expenses (the "Employee Motion");

C.        Expedited Motion Pursuant to 11 U.S.C. §§ 105(a), 366(a) and 507 (I) for

Authority to Pay Prepetition Utility Claims, (II) to Determine Adequacy of Assurance of

Payment for Future Service from Utilities and (III) to Establish Procedures for Determining

Requests for Additional Assurance (the "Utilities Motion");

D.        Expedited Motion for Extension of Time to File Schedules and Statement

of Financial Affairs (the "Schedules and Statement Motion"); and

E.        Debtor's Expedited Motion to Limit Subsequent Notices and Remove

Parties from Full Matrix (the "Notice Motion").

2.        Immediately upon entry of an Order setting an expedited hearing on this Motion,

the Motion and proposed Order granting same will be served upon the United States Trustee, the

Debtor's known secured creditors, the 20 largest unsecured creditors of Debtor, and on any

affected parties such as banks or utilities, by electronic mail, facsimile, or telephone (where

known) and by first class mail.

3.        Service of the First Day Motions, as well as service of this Order as set forth

above, is deemed to be adequate and appropriate under the circumstances and in full compliance

with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure

and the Local Rules of the United States District Court and Bankruptcy Court for the Middle

District of Tennessee.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

547520.1/2013702

Case 3:13-bk-10974   Doc 29   Filed 01/08/14   Entered 01/08/14 16:35:23   Desc Main
Document   Page 72 of 76

APPROVED FOR ENTRY:

/s/ D. Hiatt Collins
D. Hiatt Collins
G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Counsel for Debtor-in-Possession
Suite 1700
150 Third Ave. South
Nashville, TN 37201
(615) 244-4994; fax (615) 256-6339
hcollins@gsrm.com; rbucy@gsrm.com;
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

| Party | Notice |
|---|---|
| Abbotts, Robert T. 718 Ashmeade Rd. Charlotte, NC 28211-4242 | Federal Express on 1/2/14 |
| Barnett, Charlotte 9253 White Cliff Way Indianapolis, IN 46234 | First Class Mail on 1/2/14 Email on 1/2/14 |
| Dillon, Helene c/o Western Nat'l Trust Co. PO Box 40430 Reno, NV 89504 | U.S. Postal Service Express Mail on 1/2/14 |
| Gorman, Vivian E. 672 W. Hollis St. Nashua, NH 03062 | First Class Mail on 1/2/14 Telephone on 1/2/14 |
| Hall, Carolyn H. 2412 Churchill Drive Wilmington, NC 28403 | First Class Mail on 1/2/14 Telephone on 1/2/14 Email on 1/3/14 |
| Heihl, Karen 12827 Minx Rd. La Salle, MI 48145 | First Class Mail on 1/2/14 Telephone on 1/2/14 Email on 1/3/14 |
| Hyneman, Michael 308 Patriots Landing Coatesville, IN 46121 | First Class Mail on 1/2/14 Telephone on 1/2/14 Email on 1/2/14 |
| Lentz, Ruth R. 2524 Richmar Dr. Dayton, OH 45434 | First Class Mail on 1/2/14 Telephone on 1/2/14 Email on 1/2/14 |
| Mack, Robert 185 N. Airport Way Manteca, CA 95337 | First Class Mail on 1/2/14 Telephone on 1/2/14 Email on 1/2/14 |
| Malone, Michael K. 64 Trinity St. Newton, NJ 07865 | Federal Express on 1/2/14 |

| | |
|---|---|
| McCabe, Richard A.<br>8271 S. Continental Divide Rd.<br>#304<br>Littleton, CO 80127 | Federal Express on 1/2/14 |
| Nation, Florence<br>c/o Charlotte Moore<br>114 Byron<br>League City, TX 77573 | First Class Mail on 1/2/14<br>Telephone on 1/2/14<br>Email on 1/2/14 |
| Regions Bank<br>PO Box 2224<br>Birmingham, AL 35246 | First Class Mail on 1/2/14 |
| Regions Bank<br>c/o Eric V. Helmers Esq.<br>Counsel for Regions Bank<br>1901 Sixth Ave., 19th Floor<br>Birmingham, AL 35203 | First Class Mail on 1/2/14<br>Email on 1/2/14 |
| Rice, James D.<br>744 Willowhead<br>Naples, FL 34103 | Federal Express on 1/2/14 |
| Rice, Sharon<br>744 Willowhead<br>Naples, FL 34103 | Federal Express on 1/2/14 |
| Speer, Sandra<br>18 Santa Cruz Rd.<br>Tuckerton, NJ 08087 | Federal Express on 1/2/14 |
| Stetzer, Grace M.<br>8629 LaLosa Dr. West<br>Jacksonville, FL 32217 | First Class Mail on 1/2/14<br>Telephone on 1/2/14<br>Federal Express on 1/3/14 |
| Stetzer, Mark<br>8629 LaLosa Dr. West<br>Jacksonville, FL 32217 | First Class Mail on 1/2/14<br>Telephone on 1/2/14<br>Federal Express on 1/3/14 |
| Stolarz, Dorothy P.<br>59 Maple Ridge Dr.<br>Somers, CT 06071 | Federal Express on 1/2/14 |

| | |
|---|---|
| Taylor, Richard M.<br>501 Haverhill Lane<br>Colleyville, TX 76034 | First Class Mail on 1/2/14<br>Telephone on 1/2/14<br>Federal Express on 1/3/14 |
| Waits, Sybil Turner<br>565 Mountain Way NE<br>Atlanta, GA 30342 | Federal Express on 1/2/14 |