# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974 |
| **dba THE NEW LIFE GROUP,** | ) | Chapter 11 |
| **dba NATIONAL COMMUNITY** | ) | Judge Mashburn |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CHAPTER 11 PLAN OF LIQUIDATION
## DATED APRIL 30, 2014, FILED BY DEBTOR

GULLETT, SANFORD, ROBINSON & MARTIN, PLLC

G. Rhea Bucy
Thomas H. Forrester
Linda W. Knight
150 Third Avenue, South. Suite 1700
Nashville, TN 37201
(615) 244-4994
Fax (615) 256-6339
rbucy@gsrm.com; tforrester@gsrm.com;
lknight@gsrm.com; bke@gsrm.com

*Attorneys for New Life International, Debtor-in-Possession*

# TABLE OF CONTENTS

ARTICLE I      DEFINITIONS ................................................................. 1

    Section 1.1    Definitions ................................................................. 1

    Section 1.2    Other Terms, Rules of Construction, Computation of Time ............... 11


ARTICLE II     TREATMENT OF UNCLASSIFIED CLAIMS .................................... 12

    Section 2.1    Non-Classification ............................................................ 12

    Section 2.2    Administrative Claims ....................................................... 12

    Section 2.3    Professional Fee Claims ...................................................... 13

    Section 2.4    U.S. Trustee Fees ............................................................. 14


ARTICLE III    CLASSIFICATION OF CLAIMS .............................................. 15

    Section 3.1    Class 1 ....................................................................... 15

    Section 3.2    Class 2 ....................................................................... 15

    Section 3.3    Class 3 ....................................................................... 15

    Section 3.4    Class 4 ....................................................................... 15

    Section 3.5    Class 5 ....................................................................... 16

    Section 3.6    Class 6 ....................................................................... 16

    Section 3.7    Class 7 ....................................................................... 16

    Section 3.8    Class 8 ....................................................................... 17


ARTICLE IV    TREATMENT OF CLAIMS; IMPAIRMENT ...................................... 17

    Section 4.1    Class 1 Claimants ............................................................ 17

    Section 4.2    Class 2 Claimants ............................................................ 17

    Section 4.3    Class 3 Claimant ............................................................. 18

    Section 4.4    Class 4 Claimants ............................................................ 19

    Section 4.5    Class 5 and Class 6 Claimants .............................................. 19

    Section 4.6    Class 7 Claimants: ........................................................... 19

    Section 4.7    Class 8 Interests ............................................................. 20


ARTICLE V     MEANS FOR EXECUTION OF THE PLAN; THE PLAN
ADMINISTRATOR ................................................................... 20

    Section 5.1    Vesting of Assets in the Debtor ............................................. 20

    Section 5.2    Continuing Existence ........................................................ 21

Section 5.3     Management of Debtor ......................................................................... 21

Section 5.4     Liquidation of Remaining Assets ........................................................ 21

Section 5.5     Plan Funding ..................................................................................... 21

Section 5.6     Powers and Obligations of the Plan Administrator ........................... 21

Section 5.7     Plan Administrator's Bond .................................................................. 24

Section 5.8     Resignation, Death or Removal of Plan Administrator ....................... 25

Section 5.9     Post Effective Date Committee ............................................................ 25

Section 5.10    Rights of Action ................................................................................. 27

Section 5.11    Corporate Action ................................................................................ 27

Section 5.12    Cancellation of Existing Securities, Instruments and Agreements .... 28

Section 5.13    Full and Final Satisfaction ................................................................. 28

Section 5.14    Setoffs ............................................................................................... 28

Section 5.15    Establishment and Maintenance of Reserve for Disputed Claims ...... 29

Section 5.16    Distributions Upon Allowance of Disputed Claim ............................... 30

Section 5.17    Establishment of Reserve for Plan Expenses ...................................... 30

Section 5.18    Plan Distributions .............................................................................. 31

Section 5.19    Cash Distributions ............................................................................. 31

Section 5.20    Delivery of Plan Distributions ............................................................ 32

Section 5.21    Distributions to Holders as of the Confirmation Date ....................... 32

Section 5.22    Abandoned Remaining Assets ............................................................ 33

Section 5.23    Windup .............................................................................................. 33

Section 5.24    Indefeasibility of Distributions .......................................................... 33

Section 5.25    Saturday, Sunday, or Legal Holiday .................................................. 33

Section 5.26    Final Order ........................................................................................ 33


ARTICLE VI      PROVISIONS FOR THE ASSUMPTION OR REJECTION ...................
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................... 34


ARTICLE VII     MODIFICATION, REVOCATION OR WITHDRAWAL .........................
OF THE PLAN ......................................................................................................... 35

Section 7.1     Modification of Plan:  Generally ......................................................... 35

Section 7.2     Revocation or Withdrawal of Plan ...................................................... 35


ARTICLE VIII    CLOSING OF THE CASE ..................................................................... 36

559903.2/2013702

ii

ARTICLE IX    RETENTION OF JURISDICTION ........................................................ 37

Section 9.1    Exclusive Jurisdiction of the Court ...................................... 37

Section 9.2    Non-Exclusive Jurisdiction of the Court ............................... 38

Section 9.3    Failure of the Court to Exercise Jurisdiction ......................... 39


ARTICLE X    INJUNCTION AND RELEASES ............................................... 39

Section 10.1    Injunction ............................................................... 39

Section 10.2    Releases by the Debtor ............................................... 40

Section 10.3    Releases by Holders of Claims ...................................... 41

Section 10.4    Exculpation ............................................................ 42

Section 10.5    Indemnification ........................................................ 44

Section 10.6    Release of Collateral .................................................. 44

Section 10.7    Cause of Action Injunction ........................................... 45

Section 10.8    Preservation and Application of Insurance .......................... 45


ARTICLE XI    VOTING ........................................................................ 45

Section 11.1    Voting of Claims ....................................................... 45

Section 11.2    Nonconsensual Confirmation ......................................... 46


ARTICLE XII    MISCELLANEOUS PROVISIONS ......................................... 46

Section 12.1    Payment of Statutory Fees ........................................... 46

Section 12.2    Reports .................................................................. 46

Section 12.3    Governing Law ......................................................... 47

Section 12.4    Withholding and Reporting Requirements ........................... 47

Section 12.5    Section 1146 Exemption .............................................. 47

Section 12.6    Payment of Allowed Claims Only .................................... 48

Section 12.7    Severability ............................................................. 48

Section 12.8    Reservation of Rights .................................................. 48

Section 12.9    Binding Effect; Counterparts ......................................... 48

Section 12.10    Notices ................................................................. 49

Section 12.11    Plan Controls .......................................................... 50

**EXHIBITS:**

Exhibit A:    Executory Contracts and Leases to be Assumed

Exhibit B:    Executory Contracts and Leases to be Rejected

559903.2/2013702

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **NEW LIFE INTERNATIONAL,** | ) | Case No. 13-10974 |
| **dba THE NEW LIFE GROUP,** | ) | Chapter 11 |
| **dba NATIONAL COMMUNITY** | ) | Judge Mashburn |
| **FOUNDATION,** | ) | |
| **dba BAND ANGELS,** | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CHAPTER 11 PLAN OF LIQUIDATION
## DATED APRIL 30, 2014, FILED BY DEBTOR

New Life International, the Debtor and Debtor-in-Possession in the captioned Case, proposes the following plan of liquidation pursuant to Chapter 11 of Title 11, United States Code:

## ARTICLE I

## DEFINITIONS

Section 1.1    Definitions.  For all purposes of the Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the terms defined in this Article I have the meanings ascribed to them, as follows:

"Administrative Claim" means a Claim against the Debtor for payment of an administrative expense of the kind specified in Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including without limitation the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate, administering the Case, and operating the Debtor's business; provided, however, that the term

"Administrative Claim" shall not include any Professional Fee Claims, but shall include Post-Petition Employee Claims.

"Administrative/Priority Claims" means all Administrative Claims, Priority Tax Claims, Professional Fee Claims, U.S. Trustee Fees, and Other Priority Claims.

"Allowed" means with reference to any Claim, (i) a Claim against the Debtor that is Allowed under the Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, recoupment, or subordination of any kind, (ii) any Claim against the Debtor to the extent: (a) such Claim is scheduled by the Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed, or (b) a proof of such Claim was timely filed, or deemed timely filed, with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, and/or any applicable Final Order, and, in either case, (x) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or applicable Final Orders of the Court, (y) has been settled pursuant to express terms of the Plan, or (z) has otherwise been allowed by a Final Order, and (iii) any Claim as to which the Debtor has determined not to interpose an objection. An "Allowed Claim" shall be net of any valid setoff or recoupment amount based on a valid setoff or recoupment right. Except as otherwise expressly provided herein, the term "Allowed Claim" shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damage, or any other claims or obligations that do not compensate for actual losses incurred or (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

**For purposes of determining the Allowed amount of any Claim classified in Class 4 or Class 5 hereof, the present value of all payments coming due after the Petition Date in**

**respect of a CGA or ChIP shall be determined as of the Petition Date utilizing a discount rate of six percent (6%) per annum, and, in the case of a CGA, the mortality table known as ANN 2000.**

"Assets" means (a) all assets and properties of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights and the Debtor's interests in its subsidiaries), wherever situated and by whomever possessed, including the goodwill related thereto, operated, owned, or leased by the Debtor that constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, including, without limitation, Cash, any and all claims, Causes of Action, or rights of the Debtor under federal, state, or foreign law, letters of credit issued for or on behalf of the Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor; and (b) the proceeds, products, rents, and/or profits of any of the foregoing.

"Available Cash" means the aggregate of all Cash (including the Remaining Cash) held by or for the benefit of the Estate on the Effective Date plus all Cash generated after the Effective Date from the liquidation of the Remaining Assets, excluding Cash necessary to pay obligations in respect of Administrative/Priority Claims and Secured Claims, as applicable, and to fund the Disputed Claims Reserve and the Post Confirmation Administrative Reserve. Available Cash also means all Cash remaining in the Disputed Claims Reserve or the Post Confirmation Administrative Reserve, if any, after all expenses for which those reserves were established have been provided for or satisfied.

"Avoidance Action" means any claims, rights, defenses, or other Causes of Action arising under Sections 544, 545, 546, 547, 548, 549, 550 and 724(e) of the Bankruptcy Code.

"Ballot" means the form distributed to each holder of an Impaired Claim against the Debtor that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan.

"Bankruptcy Code," or the "Code," means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Case.

"Bankruptcy Rules," or the "Rules" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, and the local rules and general orders of the Court, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Case.

"Bar Date" means the date(s) fixed by order of the Court entered April 3, 2014 (Docket No. 120) by which certain Persons asserting a Claim against the Debtor must file a proof of Claim on account of such Claim or be forever barred from asserting a Claim against the Debtor or its property and from sharing in distributions hereunder.

"Business Day" means any day that is not a Saturday, Sunday, or "legal holiday," as defined in Bankruptcy Rule 9006.

"Case" means the Chapter 11 case commenced by the filing with the Court on December 31, 2013, of a voluntary petition for relief under Chapter 11 of the Code by the Debtor, which petition was assigned Case No. 313-10974.

"Cash" means cash or cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

559903.2/2013702

"Causes of Action" means any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, choses in actions, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Person, whether arising under the Bankruptcy Code or federal, state, common, or other law, regardless of whether such Cause of Action is the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including, without limitation, as to Causes of Action of the Debtor: (a) all causes of action under Chapter 5 of the Bankruptcy Code; (b) all other claims in avoidance, recovery, and/or subordination; and (c) all other actions described in the Disclosure Statement, the Schedules, or the Plan.

"CGA" means a charitable gift annuity agreement which was entered into before the Petition Date, which provided that NLI would make periodic payments to the annuitant during the life or lives of one or two individuals, and as to which any Person held a Claim on the Petition Date.

"ChIP" means a charitable installment purchase note or agreement (sometimes also referred to as a bargain sale installment note or agreement), which was entered into by the Debtor before the Petition Date, which provided that NLI would make periodic payments for a term of years to the seller or one or more individuals designated by the seller, and as to which any Person held a Claim on the Petition Date.

"Chapter 11" means Chapter 11 of the Bankruptcy Code.

"Claim" means any "claim" within the meaning of Section 101(5) of the Bankruptcy Code against the Debtor.

"Class" means a Class of Claims against the Debtor as defined in Article III of the Plan.

"Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to Section 1102 of the Bankruptcy Code in the Case, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

"Confirmation" means entry by the Court of an order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"Confirmation Date" means the date of entry of the order of Confirmation on the docket maintained by the Clerk of the Court.

"Confirmation Hearing" means the hearing held by the Court to consider the Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"Court" means the United States Bankruptcy Judge(s) or the United States District Judge(s) from time to time exercising original jurisdiction under the Code in the Case.

"Creditor" shall be defined as in Section 101(9) of the Code.

"Debtor" means New Life International, a Tennessee nonprofit corporation, EIN 58-1379188, the Debtor in Case No. 313-10974 (sometimes referred to herein as "NLI").

"Debtor-in-Possession" or similar phrase means the Debtor in the capacity and with the status and rights conferred by Section 1107 of the Code.

"Disclosure Statement" means the document filed by the Debtor in the Case, pursuant to Section 1125 of the Code, as the disclosure statement to accompany the Plan, and approved as such by the Court pursuant to Section 1125 and applicable Rules.

"Disputed" means, with respect to a Claim, any Claim: (a) as to which the Debtor or any other party-in-interest has interposed a timely objection or request for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the

Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by a Final Order; (b) which is a contingent Claim; or (c) which has not been Allowed.

"Disputed Claims Reserve" means the reserve to be established and maintained by the Plan Administrator described in Section 5.15 of the Plan.

"Effective Date of the Plan" or "Effective Date" means the second Business Day immediately following the thirty-fifth (35th) calendar day after entry by the Court of an order confirming this Plan; provided, said order has not been modified, vacated or reversed on appeal, and no stay of said order is then in effect.

"Estate" means the estate created by operation of Section 541(a) of the Code, upon the commencement of the Case.

"Final Order" means an order or judgment of the Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review, rehearing, reargument, or certiorari has expired and as to which no appeal or petition for review, rehearing, reargument, stay or certiorari is pending, or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived, or if an appeal, reargument, petition for review, certiorari, or rehearing has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order was appealed or from which the reargument, review, or rehearing was sought, or certiorari has been denied, and as to which the time to take any further appeal, or seek further reargument, review, certiorari, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Impaired" means "impaired" with the meaning of Section 1124 of the Bankruptcy Code.

"Members" means Robby McGee and Tony Russell, individuals residing in the Middle District of Tennessee.

"Person" means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit (or agency or political subdivision thereof), or other entity.

"Petition Date" means December 31, 2013, the date on which the Debtor filed its voluntary petition under Chapter 11.

"Plan" means this plan of liquidation dated April 30, 2014 (including all exhibits and schedules hereto), as it may be modified, amended, or supplemented from time to time.

"Plan Administrator" means the Person to be designated by the Debtor, prior to the conclusion of the hearing on approval of the Disclosure Statement, and after consultation with the Committee, and approved by the Court, or, after the Effective Date, such other Person designated pursuant to Section 5.8 hereof, to administer the Plan.

"Plan Supplement" means the compilation of documents, including any exhibits to the Plan not included herewith, that the Debtor shall file with the Court ten (10) days prior to the voting deadline for the Plan (or such later date as may be agreed to by the Debtor, and the Committee), each document of which shall be in form and substance reasonably acceptable to the Debtor and the Committee.

"Post Confirmation Administrative Reserve" means the reserve to be established and maintained by the Plan Administrator described in Section 5.17 of the Plan.

"Post Effective Date Committee" means the Committee as it shall function after the Effective Date as more fully described in Section 5.9 of the Plan.

"Post-Petition Employee Claims" means all claims of an employee of the Debtor accruing or arising after the Petition Date by reason of such employee's continued employment during the Case including, without limitation, base salary or other compensation, reimbursement of customary costs and expenses incident thereto, and other employee benefits, all in accordance with the employee's terms of employment as in effect on January 1, 2014; and, in addition, if the employee shall continue in his or her employment until terminated by the Debtor or the Plan Administrator, upon termination the employee shall be paid additional base salary or other compensation computed at the rate of one-half week for each week worked on and after January 1, 2014, provided, in no event shall such additional base pay exceed the employee's weekly base salary or other compensation as in effect on January 1, 2014, computed for twenty-six (26) weeks.

"Present Recipient" means (i) a Person who, as of the Petition Date, was the Person who was entitled to receive the next installment thereafter coming due under a ChIP or CGA; or (ii) in the case of a CGA, if the Person determined in clause (i) died after the Petition Date, and the annuity provided by such CGA is payable after such Person's death to a second Person who survives such death, said second, surviving Person for as long as he or she shall be living; or (iii) in the case of a ChIP, if the Person determined in clause (i) died after the Petition Date, said Person's lawful heir, successor, assignee, or personal representative, as proven to the satisfaction of the Plan Administrator and his counsel.

"Priority Tax Claim" means a Claim against the Debtor of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims shall include only such Claims for penalties that are related to a Claim specified in Section 507(a)(8) of the Bankruptcy Code and that seek compensation for actual pecuniary loss.

"Professional Fee Claims" means Claims against the Debtor of Professional Persons or any other Person for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code.

"Professional Fee Claims Bar Date" means 4:00 p.m. (prevailing Central time) on the date that is sixty (60) days after the Effective Date.

"Professional Persons" means all attorneys, accountants, financial advisors, investment bankers, appraisers, consultants, and other professionals retained or to be compensated by the Estate pursuant to an order of the Court entered under Sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code.

"Pro Rata" means, with respect to any monetary distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum allowable amount of all Disputed Claims in such Class for which any reserve must be established under the Plan.

"Reinsurance Contract" means a commercial annuity which NLI purchased before the Petition Date, which names as the annuitant or joint annuitant thereunder a Present Recipient of a CGA or ChIP and which remains in force on the Effective Date.

"Remaining Assets" means any and all Assets of the Debtor and property of the Estate as of the Effective Date, of every kind and character, wherever located, whether real or personal, tangible or intangible, and all proceeds thereof including, without limitation: (i) the Remaining Cash; (ii) any and all claims or Causes of Action of the Debtor or the Estate against third parties; (iii) all files and books and records relating to the Debtor's business or the administration of the Plan; and (iv) the Debtor's interests in its subsidiaries.

"Remaining Cash" means all Cash held by or for the benefit of the Estate as of the Effective Date.

"Scheduled" means, with respect to any Claim, that such Claim is listed on the Schedules.

"Schedules" means the Schedules of Assets and Liabilities filed with the Court in the Case, as amended from time to time in accordance with Bankruptcy Rule 1009.

"Secured Claim" means a Claim against the Debtor to the extent such Claim is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest, that has been perfected properly as required by applicable law and is not otherwise avoidable by the Debtor as debtor in possession or any other Person, but only to the extent of the value of the Debtor's interests in such property determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

"Substantial Consummation of the Plan," or a similar phrase, shall be defined as in Section 1101(2) of the Code.

Section 1.2    Other Terms, Rules of Construction, Computation of Time.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code, and the rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction hereof.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine or neuter.  Headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  The words "herein," "hereof,"

"hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions. Any reference in the Plan to an existing document or exhibit filed or to be filed in connection with the Disclosure Statement or the Plan means such document or exhibit, as it may have been or may be amended, modified, or supplemented. Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on or as soon as reasonably practicable after" such date. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

Section 2.1    Non-Classification. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor are not classified for the purposes of voting on or receiving distributions under the Plan. All Administrative Claims, as well as Professional Fee Claims and U.S. Trustee Fees, are instead treated separately upon the terms set forth in this Article II.

Section 2.2    Administrative Claims.

(a)    *Supplemental Administrative Claims Bar Date.* Except as provided below in Sections 2.3 and 2.4, requests for payment of Administrative Claims, for which a Bar Date to file such Administrative Claim was not previously established, must be filed no later than forty-

five (45) days after the occurrence of the Effective Date, or such later date as may be established by order of the Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

(b)     *Estimation of Administrative Claims.*     The Debtor and the Plan Administrator reserve the right, for purposes of allowance and distribution, to seek to estimate any unliquidated Administrative Claims, if the fixing or liquidation of such Administrative Claim would unduly delay the administration of and distributions under the Plan.

(c)     *Treatment.*  Each holder of an Allowed Administrative Claim, in full and final satisfaction, release and settlement of such Allowed Claim, shall receive Cash in an amount equal to such Allowed Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes Allowed or is payable, unless such holder agrees to a different treatment of such Claim. After the Effective Date, the Plan Administrator may, in the ordinary course of performing his duties hereunder, and subject to review by the Post Effective Date Committee, satisfy any liabilities, expenses and other Claims incurred by the Plan Administrator in the ordinary course of performing the Plan and without further order of the Court.

Section 2.3     Professional Fee Claims.

(a)     *Professional Fee Claims Bar Date.*  All final applications for payment of Professional Fee Claims for the period through and including the Effective Date shall be filed with the Court and served on the Plan Administrator and the other parties entitled to notice on or

before the sixtieth (60th) day after the Effective Date, or such later date as may be agreed to by the Plan Administrator. Any Professional Fee Claim that is not asserted in accordance with Section 2.3(a) shall be deemed disallowed under the Plan and the holder thereof shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset, recoup or recover such Claim against the Estate or any of its respective Assets or properties.

(b)    *Treatment.*  Each holder of an Allowed Professional Fee Claim shall be paid in Cash in an amount equal to such Allowed Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes Allowed by a Final Order, unless such holder agrees to a different treatment of such Allowed Claim.

(c)    *Post Effective Date Services.*  The fees and expenses of professionals retained by the Plan Administrator and the Post Effective Date Committee on and after the Effective Date shall be paid by the Plan Administrator upon receipt of invoice(s) therefor, or on such other terms as the Plan Administrator may agree to, without the need for further Court authorization or entry of a Final Order, but subject to the approval of the Post Effective Date Committee, which approval shall not unreasonably be withheld, and to the provisions of Article VIII hereof. If the Plan Administrator and the professional cannot agree on the amount of Post Effective Date fees and expenses to be paid to such professional or if the Post Effective Date Committee objects to such amount, such amount shall be determined by the Court.

Section 2.4    U.S. Trustee Fees.  U.S. Trustee Fees incurred by the Estate prior to the Effective Date pursuant to 28 U.S.C. § 1930, shall be paid in Cash on the Effective Date in accordance with the applicable schedule for payment of such fees. Until the Case shall have been closed by entry of a final decree of the Court, the Plan Administrator shall pay all additional

U.S. Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

For purposes of the Plan, Claims (other than Administrative Claims and Professional Fee Claims) shall be divided into the following Classes:

Section 3.1    Class 1:   Class 1 shall consist of all Claims having priority under 11 U.S.C. § 507(a)(4) or (5), the entities holding such claims being sometimes referred to herein as "Class 1 Claimants," or "Other Priority Claims."

Section 3.2    Class 2:   Class 2 shall consist of all Priority Tax Claims, the entities holding such claims being sometimes referred to herein collectively as "Class 2 Claimants."

Section 3.3    Class 3:   Class 3 shall consist of all allowed Claims of Regions Bank (sometimes referred to herein as "Regions," or the "Bank"), to the extent such Claims are secured by valid, perfected, and unavoidable liens or security interests in property in which the Estate has an interest, and to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of Regions' interests in the Estate's interests in such property, the entity holding such Claims being sometimes referred to herein as "Class 3 Claimant."

Section 3.4    Class 4:   Class 4 shall consist of all Claims that shall have been Allowed in favor of a Present Recipient of a CGA or ChIP, provided, that on the Effective Date the Estate is the payee of a Reinsurance Contract that names said Present Recipient as an annuitant or joint

annuitant thereunder, the entities holding such Claims being sometimes referred to herein collectively as the "Class 4 Claimants."

Section 3.5    Class 5:  Class 5 shall consist of all Claims that shall have been Allowed in favor of a Present Recipient of a CGA or ChIP, provided, that on the Effective Date there is no Reinsurance Contract that names said Present Recipient as an annuitant or joint annuitant thereunder, the entities holding such claims being sometimes referred to herein collectively as the "Class 5 Claimants."

Section 3.6    Class 6:  Class 6 shall consist of all allowed unsecured Claims not entitled to priority and not expressly included in the definition of any other Class (including without limitation each such allowed Claim arising out of the rejection of any executory contract or unexpired lease, and each such allowed Claim secured by a lien on property in which the Debtor had an interest on the Petition Date to the extent that such claim is determined to be unsecured in accordance with 11 U.S.C § 506(a), and each Claim of the kinds described in clause (4) or (5) of 11 U.S.C. § 507(a), to the extent that the Allowed amount of such Claim exceeds the maximum amount or fails to satisfy another condition or limitation (as set forth in said clauses) in or pursuant to which a Claim may be accorded priority thereunder), the entities holding such Claims being referred to herein collectively as  "Class 6 Claimants."

Section 3.7    Class 7:  Class 7 shall consist of all intercompany Claims against the Debtor, and one or more of its subsidiaries, including without limitation all Claims held by the Debtor or one or more of the Debtor's subsidiaries as a result of a loan, lease or advance of money or other property, the entities holding such Claims being sometimes referred to herein collectively as the "Class 7 Claimants".

Section 3.8     Class 8:  Class 8 shall consist of the interests of the Members of the Debtor, the holders thereof being sometimes referred to herein as the "Class 8 Interests."

# ARTICLE IV

# TREATMENT OF CLAIMS; IMPAIRMENT

All Claims and Interests, as .classified herein, are Impaired within the meaning of Section 1124 of the Bankruptcy Code.   The Claims Allowed in each Class shall be treated as follows:

Section 4.1     Class 1 Claimants:  On the Effective Date the Plan there shall be paid to each Class 1 Claimant cash equal to the Allowed amount of its claim in full settlement, satisfaction, release and discharge thereof.

Section 4.2     Class 2 Claimants:  All claims Allowed in Class 2 shall bear interest from the Effective Date of the Plan as provided in 28 U.S.C. §§ 6621 and 6622, or other applicable statute, and shall be paid in equal monthly installments of principal and interest, all in conformity with Sections 511 and 1129(a)(9) of the Bankruptcy Code, the first of which installments shall be due on the thirtieth (30th) day after the Effective Date of the Plan and the last of which shall be due no later than December 31, 2018 (unless the Allowed Claims and all interest thereon shall have been fully amortized on an earlier date).   The foregoing notwithstanding, following consultation with the Post Effective Date Committee, the Plan Administrator may elect to pay any Allowed Claim in Class 2 in full and in cash on the Effective Date, or on any date before December 31, 2018..

The Plan Administrator shall timely file each tax return coming due after the Effective Date of the Plan, and shall pay any balance shown to be due thereon at the time the return is filed.

If the Plan Administrator fails to make any payment required hereunder, any deposit of any currently accruing employment tax liability, or any payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or fails to file any required federal tax return by the due date of such return (as the same may be extended) and pay any outstanding tax liability shown on the return at the time the return is filed, then the United States may declare that the Plan is in default. Failure to declare a default does not constitute a waiver by the United States or other Class 2 Claimant of the right to declare that the Plan is in default. If the United States or other affected Class 2 Claimant declares the Plan to be in default, then the entire liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Plan Administrator. If full payment is not made within 10 days of such demand, then, notwithstanding the discharge injunction of 11 U.S.C. § 1141(d), the Internal Revenue Service or other Class 2 Claimant may collect any unpaid liabilities by any means provided by applicable nonbankruptcy law.

Section 4.3    Class 3 Claimant: In full and final settlement, satisfaction, release and discharge of the Claims that shall have been Allowed in favor of the Class 3 Claimant, the Debtor-in-possession or the Plan Administrator shall sell by public or private sale the improved real properties constituting the security for the Claims of Regions, said properties being commonly known as 34 Lake Louisa Loop and 340 Lake Louisa Loop, Monteagle, Tennessee. After all usual, customary and reasonable costs and expenses of the marketing and closing of the sales of said properties have been paid or provided for, and any liens having priority over Regions' deed of trust liens have been paid or provided for, all net proceeds of each sale shall be remitted to Regions until its Allowed Claims shall have been paid in full. To any extent that said

559903.2/2013702

net proceeds shall prove insufficient to pay the full Allowed amounts of said Claims, Regions shall have Allowed Claims in Class 6 hereunder.

Section 4.4 Class 4 Claimants: In full and final settlement, satisfaction, discharge and release of each Allowed Claim under Class 4, on the Effective Date, or as soon thereafter as practicable, the Debtor and Plan Administrator shall join in the execution, acknowledgment and delivery to each Class 4 Claimant of an assignment of all the Estate's right, title and interest in, under or to the Reinsurance Contract wherein that Class 4 Claimant is named as the annuitant or a joint annuitant.

Section 4.5 Class 5 and Class 6 Claimants: In full and final settlement, satisfaction, discharge and release of all Claims that shall have been Allowed in favor of the Class 5 Claimants and the Class 6 Claimants hereunder, they shall receive on or as soon as reasonably practicable after the Effective Date Pro Rata distributions of Available Cash until each such Claimant shall have received 100% of the Allowed amount of its Claim without interest. For purposes of computing the Pro Rata distributions required hereunder, (i) there shall be added to the total of Available Cash, as otherwise computed hereunder, the total of all payments made to all Class 5 Claimants in respect of the period (or any portion thereof) commencing October 2, 2013, and ending December 31, 2013, and (ii) there shall be subtracted from the distributions required hereby to be made to each Class 5 Claimant the total of all payments received by said Claimant in respect of the aforesaid period.

Section 4.6 Class 7 Claimants: As of the Effective Date of the Plan, all Class 7 Claims shall be set off against each other, and any net balance due by the Debtor after the setoff shall be deemed cancelled, released and discharged.

Section 4.7     Class 8 Interests:  As of the Effective Date, the membership interests of the Class 8 Interests shall be deemed terminated and canceled.  No Class 8 Interest shall be entitled to receive or retain under the Plan any Cash or other property.

**In the event the net proceeds of the liquidation of the  Remaining Assets, together with all other Cash of the Estate, should exceed the amounts necessary to pay in full all amounts due under the Plan in respect of all Claims described in Article II, and in Classes 1, 2, 3, 4, 5 and 6 of this Article III, on the one hundred eightieth (180th) day after the last required distribution hereunder has been made in respect of said Claims, the excess Cash (together with all Cash which the Plan Administrator has been unable, or is not required, to distribute to any holders of said Claims in accordance with Section 5.19 or Section 5.20 hereof), shall be distributed to an entity qualified under Section 501(c)(3) of the Internal Revenue Code, to be designated by the Debtor prior to the conclusion of the hearing on approval of the Disclosure Statement, following consultation with the Committee and the Tennessee Attorney General.**

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN; THE PLAN ADMINISTRATOR

Section 5.1     Vesting of Assets in the Debtor.  Except as expressly provided herein, on the Effective Date, all Remaining Assets shall vest in the Debtor free and clear of all Claims against the Debtor, liens, encumbrances, charges, and other rights and interests of Creditors arising on or before the Effective Date, but subject to the terms and conditions of the Plan and the Order of Confirmation.

Section 5.2    Continuing Existence.  From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating by conversion to Cash, or other methods, the Remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting Causes of Action, interests, rights and privileges of the Debtor, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns, and (vii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan.

Section 5.3    Management of Debtor.  On the Effective Date, the operation of the Debtor shall become the general responsibility of the Plan Administrator in accordance with applicable law.  The Plan Administrator shall implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and the Order of Confirmation.

Section 5.4    Liquidation of Remaining Assets.  From and after the Effective Date, the Plan Administrator and the Debtor, in consultation with the Post Effective Date Committee, may, without further approval of the Court, use, sell at public or private sale, assign, transfer, or otherwise dispose of any of the Remaining Assets and convert the same to Cash.

Section 5.5    Plan Funding.  The funds utilized to make Cash payments under the Plan have been and/or will be generated from, among other things, collections, the proceeds of sale of assets prior to the Effective Date, and the proceeds of the sale, liquidation or other disposition of the Remaining Assets.

Section 5.6    Powers and Obligations of the Plan Administrator.

(a)    The Order of Confirmation shall confirm the appointment of the Plan Administrator, and approve his or her compensation.  The compensation of any successor Plan

Administrator shall be as determined by the Post Effective Date Committee, or as determined by the Court if the Post Effective Date Committee and the Plan Administrator are unable to agree on the compensation of such successor Plan Administrator. The Plan Administrator shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code, and shall have all powers, authority and responsibilities specified under Sections 704 and 1106 of the Bankruptcy Code, and from and after the Effective Date shall succeed to all the rights, defenses, offsets, and counterclaims of the Debtor and the Committee in respect of all Claims and Causes of Action, and in that capacity shall have the exclusive power to prosecute, defend, compromise, settle and otherwise deal with all Causes of Action and objections to Claims.

(b) The Plan Administrator will act for the Debtor in a fiduciary capacity as applicable to a board of directors, subject to the provisions of the Plan. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Debtor with respect to the Remaining Assets as necessary to protect, conserve, and liquidate all Remaining Assets as quickly as reasonable practicable. The powers and duties of the Plan Administrator shall include the right:

(i) to invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to holders of Allowed Claims and pay taxes, if any, and other obligations owed by the Debtor or incurred by the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(ii) to receive, manage, invest, supervise, and protect the Remaining Assets, including paying taxes, if any, or other obligations incurred in connection with the Remaining Assets;

(iii) to engage attorneys, consultants, agents, employees and all professional persons, including without limitation such as were employed by the Debtor-in-

559903.2/2013702

22

Case 3:13-bk-10974   Doc 143   Filed 04/30/14   Entered 04/30/14 15:56:51   Desc Main
Document      Page 26 of 66

Possession with approval of the Court prior to the Effective Date, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(iv)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professionals engaged by the Plan Administrator or the Post Effective Date Committee, and to pay all other expenses in connection with administering the Plan and winding down the affairs of the Debtor, in each case in accordance with the Post Confirmation Administrative Reserve and associated wind-down budget, or as otherwise agreed to by the Plan Administrator, in either case without further order of the Court;

(v)     to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's business;

(vi)     in consultation with the Post Effective Date Committee, to use, sell at public or private sale, assign, transfer, abandon or otherwise dispose of any of the Remaining Assets and convert the same to Cash;

(vii)     to coordinate the collection of outstanding accounts receivable;

(viii)     to coordinate the storage and maintenance of the Debtor's books and records;

(ix)     to oversee compliance with the Debtor's accounting, finance and reporting obligations;

(x)     to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

(xi)     to perform any additional corporate actions as necessary to carry out the wind-down and liquidation of the Debtor;

(xii)    to communicate regularly with and respond to inquiries from the Post Effective Date Committee and their professionals, including providing to them regular cash budgets, information on all disbursements, and copies of bank statements on a monthly basis;

(xiii)    subject to the approval of the Post Effective Date Committee (which approval shall not be unreasonably withheld), to object to, compromise and settle Claims;

(xiv)    to act on behalf of the Debtor and the Estate in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and subject to the approval of the Post Effective Date Committee (which approval shall not be unreasonably withheld), to settle, retain, enforce, dispute or adjust any Claim and otherwise pursue actions involving the Remaining Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(xv)    to implement and/or enforce all provisions of the Plan;

(xvi)    to obtain, purchase and maintain, using the Remaining Cash, a directors and officers liability insurance policy and an errors and omissions insurance policy, with appropriate tails; and

(xvii)    to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Court order or as may be necessary and proper to carry out the provisions of the Plan.

Section 5.7    Plan Administrator's Bond.    The Plan Administrator shall obtain and maintain a bond in the amount of 110% of the Cash held by or for the benefit of the Estate.    The Plan Administrator shall pay for such bond from the Remaining Cash.

Section 5.8    Resignation, Death or Removal of Plan Administrator.    The Plan Administrator may resign at any time upon not less than 30 days' written notice to the Post Effective Date Committee.    The Plan Administrator may be removed at any time by the Post Effective Date Committee for cause upon proper application to, and Final Order of, the Court.    For purposes of the preceding sentence, "cause" shall mean gross negligence, fraud or willful misconduct.    In the event of the resignation, removal, death or incapacity of the Plan Administrator or any other vacancy in the position of Plan Administrator, the Post Effective Date Committee and the directors of the Debtor shall jointly designate another Person to become the Plan Administrator, and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor; provided, however, in the event the Post Effective Date Committee and the Debtor's directors cannot reach agreement on the appointment of a successor Plan Administrator, either party may nominate a successor Plan Administrator and the appointment will be determined by the Court.    No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

Section 5.9    Post Effective Date Committee.

(a)    On the Effective Date, the Committee shall continue as the Post Effective Date Committee until such time as all distributions on account of all Allowed Claims in Classes 4, 5 and 6, have been completed or reserved for in accordance with the Plan, at which time the Post Effective Date Committee shall be dissolved and all requirements in the Plan respecting the approval of or consultation with the Post Effective Date Committee shall be terminated.

(b)    The Post Effective Date Committee shall be comprised of the members of the Committee, unless any particular member thereof opts not to be a member thereof.    If a member

of the Post Effective Date Committee resigns or is removed, a replacement who holds a Claim Allowed in Class 4, Class 5 or Class 6, may be appointed by the remaining members. The Post Effective Date Committee's role shall be to consult with the Plan Administrator, and to perform the functions set forth in the Plan.

(c) The Post Effective Date Committee shall have the power and authority to utilize the services of the Committee's Court-approved counsel and financial advisor as necessary to perform the duties of the Post Effective Date Committee and to authorize and direct such Persons to act on behalf of the Post Effective Date Committee in connection with any matter requiring its attention or action. The Debtor and its Estate shall be responsible for the payment of all reasonable and necessary fees and expenses of such counsel and financial advisor in accordance with the Post Confirmation Administrative Reserve and associated wind-down budget. The Plan Administrator shall pay the reasonable and necessary fees and expenses of the Post Effective Date Committee's counsel and financial advisor without the need for Court approval, subject to the provisions of Article VIII hereof.

(d) Except for the reimbursement of reasonable, actual costs and expenses incurred in connection with their duties as members of the Post Effective Date Committee, the members of the Post Effective Date Committee shall serve without compensation. Reasonable expenses incurred by members of the Post Effective Date Committee may be paid by the Plan Administrator in accordance with the Post Confirmation Administrative Reserve and associated wind-down budget without the need for Court approval.

(e) The Plan Administrator shall provide quarterly reports of all material matters to the Post Effective Date Committee.

Section 5.10   Rights of Action.   In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Plan Administrator may pursue all reserved rights of action for the benefit of the holders of Claims, including, without limitation, Causes of Action of the Debtor.   Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Plan Administrator to pursue and prosecute any reserved rights of action.   Except as otherwise set forth in the Plan, all Causes of Action of the Debtor shall survive Confirmation of the Plan and the commencement and prosecution of Causes of Action of the Debtor shall not be barred or limited by any estoppel, whether judicial, equitable or otherwise.   In reviewing the Plan and the Disclosure Statement, and in determining whether to vote for or against the Plan, Creditors (including Creditors who received payments or transfers from the Debtor within ninety (90) days prior to the Petition Date and insiders who received payments from the Debtor within one (1) year before the Petition Date) and other parties should consider that Causes of Action of the Debtor may exist against them, that, except as otherwise set forth in the Plan, the Plan preserves all Causes of Action of the Debtor, and that the Plan authorizes the Plan Administrator to prosecute all Causes of Action of the Debtor.

Section 5.11   Corporate Action.   On the Effective Date, the appointment of the Plan Administrator, and any and all other matters provided for under the Plan involving corporate action by the Debtor, their directors or trustees, including, without limitation, the transfer of management responsibilities of the Debtor to the Plan Administrator, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable law, without any requirement of further action by the Debtor's directors, officers, or trustees.   Upon the distribution of all Available Cash pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect

with the Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Debtor may take appropriate action to dissolve and terminate its corporate existence under applicable law. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtor previously conducted business.

Section 5.12   Cancellation of Existing Securities, Instruments and Agreements.  On the Effective Date, except as otherwise provided herein, all securities, instruments, and agreements governing any Impaired Claim shall be deemed cancelled and terminated, and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed released and/or satisfied as to the Debtor.

Section 5.13   Full and Final Satisfaction.  All payments and all distributions under the Plan shall be in full and final satisfaction, release, discharge and settlement of the Debtor's obligations with respect to all Claims, except as otherwise provided in the Plan.

Section 5.14   Setoffs.  The Plan Administrator may, pursuant to and to the greatest extent permitted by applicable law, set off against any Claim asserted against the Remaining Assets, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that that Debtor or the Estate may have against the holder of such Claim, provided that the Plan Administrator shall give the holders of such Claim notice of the proposed setoff and the holder of such Claim does not object to the proposed setoff within thirty (30) days, provided further that if an objection is timely raised to a proposed setoff,

the Plan Administrator may seek relief from the Court to effectuate the setoff, and provided further that neither the failure to effect a setoff, nor the allowance of any Claim against the Debtor hereunder, shall constitute a waiver or release of any such claim the Debtor or the Estate may have against such holder.

Section 5.15   Establishment and Maintenance of Reserve for Disputed Claims. On or as soon as practicable after the Effective Date and before making any distributions under the Plan, the Plan Administrator (on behalf of the Debtor), in consultation with the Post Effective Date Committee, shall establish and maintain a Cash reserve (the "Disputed Claim Reserve") equal to the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claim were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order. Any Cash including, without limitation, the Disputed Claims Reserve, shall be held in an interest-bearing account. As Disputed Claims are resolved, excess Cash in the Disputed Claims Reserve shall be made available for distribution to the holders of Allowed Claims in accordance with the Plan, after funding the Post Confirmation Administrative Reserve. For the purposes of effectuating the provisions of this Section and the distributions to holders of Allowed Claims, the Plan Administrator may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Court estimate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated shall be deemed the Allowed amount of such Claims for purposes of distribution under the Plan. In lieu of estimating the amount of any Disputed Claim, the Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by agreement in writing by and between the Plan Administrator and the holder of a Disputed Claim. Claims may be estimated

by the Court and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

Section 5.16   Distributions Upon Allowance of Disputed Claim.   The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive distributions from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim shall have any Claim against the Disputed Claims Reserve or the Debtor with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

Section 5.17   Establishment of Reserve for Plan Expenses.   On or as soon as practicable after the Effective Date and before making any distributions under the Plan, the Plan Administrator (on behalf of the Debtor), in consultation with the Post Effective Date Committee, shall establish and maintain a Cash reserve (the "*Post Confirmation Administrative Reserve*") and establish an associated wind-down budget for estimated expenses of administering the Plan including, without limitation, (i) amounts reasonably necessary to maintain the value of the Remaining Assets during liquidation, (ii) reasonable administrative expenses (including the costs and expenses of the Plan Administrator, the Post Effective Date Committee, and the fees, costs and expenses of all Professional Persons retained by the Plan Administrator and the Post Effective Date Committee, and taxes, if any, imposed in respect of the Remaining Assets), (iii) amounts necessary to fund the Causes of Action, (iv) amounts to satisfy other liabilities to which

559903.2/2013702

the Remaining Assets are otherwise subject, in accordance with the Plan, and (v) any other necessary reserves. In the event the Plan Administrator and the Post Effective Date Committee are unable to agree on the appropriate level of the Post Confirmation Administrative Reserve, the Plan Administrator may seek appropriate relief from the Court.

Section 5.18   Plan Distributions.   The Plan Administrator shall make distributions to holders of Allowed Claims in accordance with Article IV of the Plan on or as soon as reasonably practicable after the Effective Date. From time to time, in consultation with the Post Effective Date Committee, the Plan Administrator shall make subsequent Pro Rata distributions to holders of Allowed Claims, including to the holders of Allowed Class 5 and Class 6 Claims in accordance with Article IV of the Plan. All such distributions to the holders of Allowed Claims shall be made in accordance with the Plan. The Plan Administrator may withhold from amounts distributable to any Person any and all amounts determined in the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Plan Administrator to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

Section 5.19   Cash Distributions.   The Plan Administrator shall not be required to make interim or final Cash distributions in an amount less than $10. Any funds so withheld and not distributed on an interim basis shall be held in reserve and distributed in subsequent distributions. Should a final distribution to any holder of a Claim not equal or exceed $10, that sum shall be distributed to the entity designated pursuant to Section 4.7 hereof and confirmed by the Court.

559903.2/2013702

Section 5.20   Delivery of Plan Distributions.  All distributions under the Plan on account of any Allowed Claims shall be made at the address of the holder of such Allowed Claim as set forth in the Debtor's records as of the Effective Date including without limitations the Schedules, unless said holder shall have filed a proof of claim, in which case the address set forth in the proof of claim shall control.   The foregoing notwithstanding, the Plan Administrator shall honor any holder's written change of address if received at least fifteen (15) days prior to a given distribution date.   In the event that any distribution to any holder is returned as undeliverable, the Plan Administrator shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Plan Administrator has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that any undeliverable distribution that remains so after one hundred eighty (180) days following such attempted distribution shall be reallocated by the Plan Administrator for re-distribution for the benefit of all other holders of Allowed Claims in accordance with the Plan.   Any undeliverable funds remaining in the hands of the Plan Administrator on the one hundred eightieth (180th) day after the making of the last distribution to Class 5 and 6 Claimants hereunder shall be distributed to the entity designated pursuant to Section 4.7 hereof and confirmed by the Court.

Section 5.21   Distributions to Holders as of the Confirmation Date.  As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  Neither the Debtor nor the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for

all purposes under the Plan (except as to voting to accept or reject the Plan pursuant to Section 6.1 of the Plan) with only those holders of record as of the close of business on the Confirmation Date.

Section 5.22    Abandoned Remaining Assets.    Upon the election of the Plan Administrator, with the approval of the Post Effective Date Committee, the Plan Administrator may abandon any Assets that are deemed burdensome or of inconsequential value to the Estate, without the need for additional approval of the Court, and upon such abandonment, such Assets shall cease to be Remaining Assets.

Section 5.23    Windup.    After (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, (c) all Causes of Action have been resolved, and (d) all Remaining assets have been reduced to Cash or abandoned, the Plan Administrator shall effect a final distribution of all Cash remaining (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to holders of Allowed Claims in accordance with the Plan.

Section 5.24    Indefeasibility of Distributions.    All distributions provided for under the Plan shall be indefeasible.

Section 5.25    Saturday, Sunday, or Legal Holiday.    If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

Section 5.26    Final Order.    Any requirement in the Plan for a Final Order may be waived by the Debtor or the Plan Administrator.

## ARTICLE VI

### PROVISIONS FOR THE ASSUMPTION OR REJECTION
### OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtor hereby assumes as of the Effective Date, pursuant to sections 365 and 1123(b) of the Code, the executory contracts and unexpired leases set forth in Exhibit A, attached hereto and incorporated herein by this reference, in addition to those executory contracts and unexpired leases which have been previously assumed with approval of the Court during the Case.

Debtor hereby rejects as of the Effective Date, pursuant to sections 365 and 1123(b) of the Code, the executory contracts and unexpired leases set forth in Exhibit B, attached hereto and incorporated herein by this reference, in addition to those executory contracts and unexpired leases which have been previously rejected with approval of the Court during the Case.

All executory contracts and unexpired leases not heretofore assumed or rejected with approval of the Court during this Chapter 11 Case, and not set forth in Exhibit A or Exhibit B hereto, are hereby rejected, as of the Effective Date.

The identification of a document in Exhibit A or Exhibit B does not constitute an admission by the Debtor that the document is a valid, binding, enforceable, unavoidable or executory contract, or that the document is not an installment sales contract disguised as a lease, the Debtor hereby expressly reserving its rights with respect to all such issues, as well as its rights to object to any Claim filed by any party to any document identified in Exhibit A or Exhibit B.

**ANY PARTY TO AN UNEXPIRED LEASE OR OTHER EXECUTORY CONTRACT THAT IS REJECTED HEREBY MUST FILE ANY PROOF OF CLAIM FOR DAMAGES ARISING UPON SAID REJECTION OR TERMINATION NO LATER THAN THE THIRTIETH (30TH) DAY AFTER THE EFFECTIVE DATE OF THE PLAN. ANY PARTY TO AN UNEXPIRED LEASE OR OTHER EXECUTORY CONTRACT THAT**

**WAS REJECTED PURSUANT TO A PRIOR ORDER ENTERED IN THE CASE MUST FILE ANY PROOF OF CLAIM FOR DAMAGES NO LATER THAN THE "REJECTION BAR DATE," AS DEFINED IN THE BAR DATE ORDER ENTERED APRIL 3, 2014 (DOCKET NO. 120).**

## ARTICLE VII

### MODIFICATION, REVOCATION OR WITHDRAWAL
### OF THE PLAN

Section 7.1    Modification of Plan:  Generally.  The Debtor may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After such time and prior to Substantial Consummation of the Plan, the Debtor may, so long as the treatment of holders of Claims against the Debtor under the Plan is not adversely affected, institute proceedings in Court to remedy any defect or omission or to reconcile any inconstancies in the Plan, the Disclosure Statement or the order of Confirmation and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or as the Court shall otherwise order.

Section 7.2    Revocation or Withdrawal of Plan.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan and any order of Confirmation shall be deemed null and void, and nothing contained in the Plan or any order confirming the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving

Case 3:13-bk-10974   Doc 143   Filed 04/30/14   Entered 04/30/14 15:56:51   Desc Main
Document    Page 39 of 66

the Debtor; further, the case shall continue and be administered as if the Plan had been withdrawn prior to its Confirmation.

## ARTICLE VIII

## CLOSING OF THE CASE

At such time as the Case has been fully administered, that is, when all administrative matters or issues requiring action or resolution by the Court have been completed or resolved, and the Plan has been Substantially Consummated, this Case shall be closed. To close the Case the Plan Administrator shall file an application for final decree showing that the Case has been fully administered and that the Plan has been Substantially Consummated. After notice to all creditors, the United States Trustee and persons specially requesting notice, and an opportunity for a hearing, an order approving the application and closing the Case (final decree) may be entered.

In the period after the Effective Date but before closing of the Case, the Plan Administrator may continue to utilize the services of Professional Persons whose employment was approved at or prior to Confirmation, including without limitation Professional Persons employed by the Debtor-in-Possession or the Committee with approval of the Court, in completing administration of the Case and in the consummation and performance of the Plan, and, if necessary, with approval of the Court may employ additional Professional Persons to render services in or in connection with the Case. With respect to services rendered and expenses incurred in or in connection with the Case by any Professional Person during such period, the Professional Person may render periodic billings therefor to the Plan Administrator who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In the application for final decree, the Plan Administrator shall detail all amounts paid

during such period to Professional Persons as compensation for services rendered or reimbursement of expenses incurred, and with respect to which no prior allowance thereof has been made by the Court. At the hearing on the application for final decree the Court shall consider and determine whether or not such payments shall be approved as reasonable.

## ARTICLE IX

## RETENTION OF JURISDICTION

Section 9.1    Exclusive Jurisdiction of the Court.  Except as limited hereinbelow, and in addition to the continued jurisdiction after Confirmation which is provided for as a matter of law by the Code and Rules, following the Effective Date the Court will retain exclusive jurisdiction of the Case for the following purposes:

(a)    to hear and determine any pending applications for the assumption or rejection of executory contracts, and the resulting allowance of Claims against the Debtor;

(b)    to determine any adversary proceedings, applications, contested matters and other litigated matters pending on the Effective Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)    to hear and determine objections to or requests for estimation of Claims against the Debtor, including any objections to the classification of any Claims, and to allow, disallow and/or estimate Claims, in whole or in part;

(e)    to enter and implement such orders as may be appropriate in the event the order of Confirmation is for any reason stayed, revoked, modified or vacated;

(f)     to issue any appropriate orders in aid of execution of the Plan or to enforce the Confirmation Order;

(g)     to hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan or in any order of the Court, including, without limitation, the Confirmation Order;

(h)     to hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under Sections 327, 328, 330, 331, 363 and 503(b) of the Bankruptcy Code;

(i)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(j)     to hear and determine other issues presented or arising under the Plan;

(k)     to hear and determine other issues related to the Plan to the extent not inconsistent with the Bankruptcy Code; and

(l)     to enter a final decree closing the Case.

Section 9.2     Non-Exclusive Jurisdiction of the Court.  Following the Effective Date, the Court will retain non-exclusive jurisdiction of the Case for the following purposes:

(a)     to recover all Assets of the Debtor and property of the Estate, wherever located;

(b)     to hear and determine any actions commenced on or after the Effective Date by the Plan Administrator, including, but not limited to, Avoidance Actions or other Causes of Action;

(c)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the

Debtor or the Estate arising prior to the Effective Date or relating to the period of administration of the Case, including, without limitation, matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

(d)     to hear and determine any other matters to the extent not inconsistent with the Bankruptcy Code.

Section 9.3     Failure of the Court to Exercise Jurisdiction.  If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Case, including with respect to the matters set forth above in this Article, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE X
## INJUNCTION AND RELEASES

Section 10.1    Injunction**.  Except as otherwise expressly provided herein including, without limitation, the treatment of Claims against the Debtor, the entry of the order of Confirmation shall, provided that the Effective Date shall have occurred, operate to enjoin permanently all Persons who have held, currently hold or may hold a Claim against the Debtor, or who assert the right or duty to act for or on behalf of any such Person, from taking any of the following actions against the Debtor, the Plan Administrator, the Committee, the Post Effective Date Committee, or any of their respective attorneys, advisors, employees, present and former directors, officers, trustee, agents, members, or any of their respective successors or assigns (in each case, solely in their capacities as such), or any of their respective assets or properties, on account of any Claim against the Debtor: (a)  commencing, conducting or continuing in any manner, directly or indirectly, any suit,**

559903.2/2013702

action or other proceeding of any kind with respect to a Claim against the Debtor; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim against the Debtor; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind with respect to a Claim against the Debtor; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor or its property or Assets with respect to a Claim against the Debtor; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with or is inconsistent with the provisions of the Plan; __provided__, __however__, nothing in this injunction shall limit the rights of a holder of a Claim against the Debtor to enforce the terms of the Plan.

Section 10.2    Releases by the Debtor.  **To the greatest extent permissible by law, and except as otherwise specifically provided in this Section 11.2 of the Plan, as of the Effective Date, the Debtor shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Debtor's and the Committee's present directors, officers, trustees, agent, attorneys, advisors, members or employees (in each case, solely in their capacities as such) and the Committee of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender**

**liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtor, the Committee, or their respective present or former directors, officers, trustees, agents, attorneys, advisors, members or employees (in each case, solely in their capacities as such) occurring from the beginning of time to and including the Effective Date related in any way, directly or indirectly, arising out of, and/or connected with any or all of the Debtor and its Estate, the Case and any financing provided to the Debtor, _provided_, _however_, that this Section 10.2 of the Plan shall not affect the liability of any Person due to willful misconduct or gross negligence as determined by a court of competent jurisdiction. Notwithstanding anything to the contrary in this Section of the Plan, this Section 10.2 of the Plan does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

Section 10.3   Releases by Holders of Claims**. To the greatest extent permissible by law and except as otherwise provided in the Plan, as of the Effective Date, each holder of a Claim against the Debtor, and each Person who asserts the right or duty to act for or on behalf of any such holder, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Debtor, the Committee, and their respective present directors, officers, trustees, agents, attorneys, advisors, members or employees of and from any and all past, present and future legal**

actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtor, the Committee, and their respective present directors, officers, trustees, agents, attorneys, advisors, members or employees occurring from the beginning of time to and including the Effective Date related in any way, directly or indirectly, arising out of, and/or connected with any or all of the Debtor and the Estate, the Case and any financing provided to the Debtor; provided, however, that this Section 10.3 of the Plan shall not affect the liability of any Person due to willful misconduct or gross negligence as determined by a court of competent jurisdiction. Nothing in this Section 10.3 of the Plan shall be deemed to release or Impair any Allowed Claim against the Debtor, which Allowed Claims against the Debtor shall be treated as set forth in Articles II and III of the Plan, as applicable.

Section 10.4 Exculpation. **None of (i) Gullett, Sanford, Robinson & Martin, PLLC, in their capacity as counsel to the Debtor, (ii) Kraft CPAs Turnaround and Restructuring**

559903.2/2013702

Case 3:13-bk-10974    Doc 143    Filed 04/30/14    Entered 04/30/14 15:56:51    Desc Main
Document      Page 46 of 66

Group, PLLC ("Kraft"), in its capacity as the Debtor's consultant; (iii) any employee of or individual affiliated with Kraft, in the capacity in which such individual served the Debtor; (iv) the Debtor's officers, directors and trustees (in their capacities as such); (v) the Committee and the Post Effective Date Committee, (vi) the members of the Committee and the members of the Post Effective Date Committee, in their individual capacities as members of the Committee and as members of the Post Effective Date Committee, (vii) Bradley Arant Boult Cummings, LLP, in their capacity as counsel to the Committee and as counsel to the Post Effective Date Committee, and (viii) any entity employed with approval of the Court to function as financial advisor for the Committee or as financial advisor for the Post Effective Date Committee, shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the Case, the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; **provided**, **however**, that the foregoing provisions shall not affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order of the Court to have constituted willful misconduct or gross negligence; and in all respects, such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be fully protected from liability in acting or refraining to act in accordance with such advice; **provided further**, **however**, that this Section 10.4 of the Plan shall not limit the Debtor's obligations under the Plan.

559903.2/2013702

Section 10.5   Indemnification.   The Plan Administrator and the members of the Post Effective Date Committee shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Plan Administrator and the members of the Post Effective Date Committee may incur or sustain in the exercise and performance of any of their respective powers and duties under the Plan, to the full extent permitted by law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result solely from the Plan Administrator's or the Post Effective Date Committee member's willful misconduct, fraud, or gross negligence.   The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Administrator out of the Remaining Cash.  The Plan Administrator shall not be personally liable for the payment of any expense of administering the Plan or any other liability incurred in connection with the Plan, and no person shall look to the Plan Administrator personally for the payment of any such expense or liability.   This indemnification shall survive the death, resignation or removal, as may be applicable, of the Plan Administrator and the members of the Post Effective Date Committee, and shall inure to the benefit of the Plan Administrator's and the Post Effective Date Committee members' heirs and assigns.

Section 10.6   Release of Collateral.  Except as expressly otherwise in the Plan, unless a holder of a Secured Claim receives a return of its collateral in respect of such Claim under the Plan:  (1) each holder of (A) an Allowed Secured Claim and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date, shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Plan Administrator requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title and interest in such property shall

559903.2/2013702

revert to the Debtor, free and clear of all Claims, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind. No distribution hereunder shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of liens. Any such holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or disallowed.

Section 10.7 Cause of Action Injunction. On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any, claim, debt, right or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan.

Section 10.8 Preservation and Application of Insurance. The provisions of the Plan shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees or officers of the Debtor, or any other Person other than as expressly as set forth herein.

## ARTICLE XI

## VOTING

Section 11.1 Voting of Claims. Each holder of an Allowed Claim in an Impaired Class which receives or retains property under the Plan shall be entitled to vote separately with respect to

Case 3:13-bk-10974   Doc 143   Filed 04/30/14   Entered 04/30/14 15:56:51   Desc Main
Document      Page 49 of 66

each of said holder's Allowed Claims, to accept or reject the Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other controlling order or orders of the Court.

Section 11.2   Nonconsensual Confirmation.   If any Impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired Class is deemed to have rejected the Plan, the Debtor reserves the right, (a) to undertake to have the Court confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (b) subject to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, to modify the Plan to the extent necessary to obtain Confirmation, provided such modifications are consistent with Article XI of the Plan.   At the Confirmation Hearing, the Debtor will seek a ruling that if no holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan will be deemed accepted by the holders of such Claims in such Class for the purposes of Section 1129(b) of the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.1   Payment of Statutory Fees.   All outstanding fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date.

Section 12.2   Reports.   Until a final decree closing the Case is entered, the Plan Administrator shall comply with any requisite reporting requirements established pursuant to the guidelines of the U.S. Trustee.

Section 12.3   Governing Law.   Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Tennessee shall govern the construction and implementation of the Plan and all rights and obligations arising under the Plan.

Section 12.4   Withholding and Reporting Requirements.   In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Plan Administrator shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.   Persons entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with such withholding and reporting requirements and to enable the Plan Administrator to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

Section 12.5   Section 1146 Exemption.   Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan; or the vesting, transfer, or sale of any real property of the Debtor, or any wholly-owned subsidiary of the Debtor, pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.   Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such

559903.2/2013702

instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

Section 12.6   Payment of Allowed Claims Only.   Notwithstanding any other provision of this Plan, no holder of a Claim shall be entitled to receive payments or distributions thereon until the Claim shall have been Allowed in accordance with the Code.

Section 12.7   Severability.   In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.   To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Court from entering the Confirmation Order, the Court, on the request of the Debtor, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the Confirmation of the Plan existing by reason of such provision; provided, however, that such modification shall not be effected except in compliance with Article VII of the Plan.

Section 12.8   Reservation of Rights.   If the Plan is not confirmed for any reason, the rights of all parties in interest in the Case are and shall be reserved in full.   Any concession reflected or provision contained herein, if any, is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by such concession.

Section 12.9   Binding Effect; Counterparts.   The provisions of the Plan shall bind all holders of Claims against the Debtor, whether or not they have accepted the Plan.   The Plan may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be

559903.2/2013702

an original and all of which counterparts, taken together, shall constitute but one and the same Plan.

Section 12.10 Notices. All notices, requests, and demands to or upon the Debtor, the Plan Administrator, the Committee, or the Post Effective Date Committee must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or by electronic mail, when received and telephonically confirmed, addressed as follows:

If to the Debtor, to:
Gullett, Sanford, Robinson & Martin, PLLC
G. Rhea Bucy, Esq.
Thomas H. Forrester, Esq.
Linda W. Knight, Esq.
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339
E-mail: rbucy@gsrm.com; tforrester@gsrm.com; lknight@gsrm.com

If to the Committee or to the Post Effective Date Committee, to:
Bradley Arant Boult Cummings, LLP
William L. Norton, III, Esq.
1600 Division Street, Suite 700
Nashville, TN 37203
Tel: (615) 252-2397
Fax: (615) 252-6397
E-mail: bnorton@babc.com

If to the Plan Administrator, to:
[RESERVED.]

Section 12.11  Plan Controls.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

[SIGNATURE PAGE FOLLOWS]

559903.2/2013702

This the 30th day of April, 2014.

NEW LIFE INTERNATIONAL

By: /s/ Robby McGee
       Robby McGee

Its: President

Attorneys for Debtor:

Gullett, Sanford, Robinson & Martin, PLLC

By: /s/ G. Rhea Bucy
G. Rhea Bucy, Esq.
Thomas H. Forrester, Esq.
Linda W. Knight, Esq.
150 Third Avenue South, Suite 1700
Nashville, TN  37201
Tel: (615) 244-4994
Fax: (615) 256-6339
E-mail:  rbucy@gsrm.com; tforrester@gsrm.com; lknight@gsrm.com

559903.2/2013702

**EXHIBIT A**
**TO NEW LIFE INTERNATIONAL'S**
**CHAPTER 11 PLAN OF LIQUIDATION**

**EXECUTORY CONTRACTS AND LEASES TO BE ASSUMED**

None.

**EXHIBIT B**
**TO NEW LIFE INTERNATIONAL'S**
**CHAPTER 11 PLAN OF LIQUIDATION**


**EXECUTORY CONTRACTS AND LEASES TO BE REJECTED**

☐

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Adelsberg, Steven<br>6 Crestleigh Place<br>Lutherville Timonium, MD 21093 | Family Foundation - Notice Only |
| Anthony, Calvin and Judith<br>652 Trotters Glen<br>Baldwin, GA 30511 | Donor Advised Account - Notice Only |
| Applebaum, Barbara<br>180 Sigmon Rd.<br>Fletcher, NC 28732 | Testementary Contract - Notice Only |
| Applebaum, Bruce<br>5946 Main St.<br>Mount Jackson, VA 22842 | Notice Only |
| Applebaum, Lewis<br>180 Sigmon Rd.<br>Fletcher, NC 28732 | Testamentary Contract - Notice Only |
| Arends, Louise Barr<br>533 Clover Ct.<br>Gibson City, IL 60936 | Testamentary Contract - Notice Only |
| Barr, Jane<br>1072 Sigmon Rd.<br>Fletcher, NC 28732 | Testamentary Contract - Notice Only |
| Barrett, Rachelle<br>1200 Fox Ridge Lorena<br>Lorena, TX 76655 | Family Foundation - Notice Only |
| Bernstein, Charles and Sally<br>783 Wayfaring Rd.<br>Cashiers, NC 28717 | Testamentary Contract - Notice Only |
| Bernstein, Keith<br>8622 Magnolia Forest Dr.<br>Sugar Land, TX 77479 | Testamentary Contract - Notice Only |
| Bernstein, Morris<br>25 Rivert Court Parkway<br>Atlanta, GA 30328 | Testamentary Contract - Notice Only |

9

_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

561953.1/20137028

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| Bickley, Joseph and Karen<br>9935 Colonial Walk South<br>Estero, FL 33928 | Family Foundation - Notice Only |
| Brown, Kristin<br>103 Wythe Ct.<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Buiting, Theodore<br>836 Wynnefield Dr.<br>Souderton, PA 18964 | Notice Only |
| Caldwell, D.H.<br>298 Berea Church Rd.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Caldwell, Todd<br>11430 Sun Rd.<br>Dade City, FL 33525 | Testamentary Contract - Notice Only |
| Casabianca, Suzette<br>9901 Grove Drive<br>New Port Richey, FL 34654 | Testamentary Contract - Notice Only |
| Clark, David<br>16002 Windsor Ave.<br>Centralia, WA 98531 | Testamentary Contract - Notice Only |
| Clark, Marilyn<br>PO Box 273<br>Hinesville, GA 31310 | Testamentary Contract - Notice Only |
| Colgan, Katharine<br>2737 Walton Way<br>Augusta, GA 30909 | Donor Advised Account - Notice Only |

Sheet  1  of  9  continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

561953.1/20137028

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Corallo, Elizabeth<br>345 Glenwood Dr.<br>Rocky Mount, VA 24151 | Notice Only |
| Craig, Guy Ford<br>2920 18th St.<br>Boulder, CO 80304 | Family Foundation - Notice Only |
| Dashow, Michael<br>4676 Reinhardt Dr.<br>Oakland, CA 94619 | Testamentary Contract - Notice Only |
| Davis, Charles<br>591 Longchamp<br>Jacksonville, FL 32244 | Testamentary Contract - Notice Only |
| Davis, Verlin<br>2703 Julie Lane<br>Middleburg, FL 32068 | Testamentary Contract - Notice Only |
| Devenport, Debra<br>1829 4th St.<br>Lincoln, CA 95648 | Testamentary Contract - Notice Only |
| Devenport, Loyd<br>18 McKenzie Way South<br>Old Fort, NC 28762 | Testamentary Contract - Notice Only |
| Eick, Susan<br>1161 North Blount St.<br>Raleigh, NC 27604 | Notice Only |
| Esack, David<br>113 No. South Lake Dr.<br>Hollywood, FL 33019 | Family Foundation - Notice Only |

Sheet   2   of   9   continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

561953.1/20137028

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| Furr, Janet Barr<br>23815 Lorance Rd.<br>Laura, IL 61451 | Testamentary Contract - Notice Only |
| Griffin, Kathleen<br>12930 Dorman Rd.<br>Apt. 353<br>Pineville, NC 28134 | Testamentary Contract - Notice Only |
| Griffin, Mark<br>7707 Herrington Woods<br>Charlotte, NC 28269 | Testamentary Contract - Notice Only |
| Gupton, Donna<br>3995 Deer Lane<br>McAlester, OK 74501 | Testamentary Contract - Notice Only |
| Guth, Leonard<br>5424 N. Martha Loop<br>Coeur D Alene, ID 83815 | Family Foundation - Notice Only |
| Hawkins, Shannon<br>2601 Philadelphia Church Rd.<br>Dallas, NC 28034 | Testamentary Contract - Notice Only |
| Hodges, Helen and Donald<br>4110 Pebble Beach<br>League City, TX 77573 | Family Foundation - Notice Only |
| Hoffer, Roger and Constance<br>4601 South Queen St.<br>Littleton, CO 80127 | Donor Advised Account - Notice Only |
| Holland, John<br>603 Fleetwood Plaza<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Honeycutt, Rebecca<br>103 Wythe Court<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Honeycutt, Wallace<br>103 Wythe Court<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Hubeny, Emilia<br>17535 /SE 106th St.<br>Renton, WA 98059 | Notice Only |

Sheet ___3___ of ___9___ continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Jacoby-Feldbaum, Charles<br>21020 Oak Lane<br>Excelsior, MN 55331 | Family Foundation - Notice Only |
| Jacoby-Kent, Alan<br>7013 Nevis Road<br>Bethesda, MD 20817 | Family Foundation - Notice Only |
| Jacoby-Sloane, Carolyn<br>114 Hammon Ave.<br>Palm Beach, FL 33480 | Family Foundation - Notice Only |
| Keim, Kelly<br>1516 Amhurst Circle<br>Birmingham, AL 35216 | Testamentary Contract - Notice Only |
| Kirkman, Amy<br>1323 N. Olive Dr. Apt. D<br>West Hollywood, CA 90069 | Notice Only |
| Kirkman, Jay<br>27 Pinckney St.<br>Greenville, SC 29601 | Notice Only |
| Kirkman, Phyliss<br>151 Tarnhill Dr.<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Kirkman, Richard<br>151 Tarnhill Dr.<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Kirkman-Sim, Gail<br>258 Simpson Hill Dr.<br>Ellijay, GA 30540 | Notice Only |
| Knapp, Raymond<br>9482 Grovecrest Cover<br>Germantown, TN 38139-3580 | Donor Advised Account - Notice Only |
| Kriegel, Timothy<br>140 Olds Trail<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Linkous, Eugene<br>1215 Chanteloupe Dr.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Linkous, Eugene Jr.<br>PO Box 2807<br>Hendersonville, NC 28793 | Testamentary Contract - Notice Only |

Sheet __4__ of __9__ continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Linkous, Helen<br>1215 Chanteloupe Dr.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Linkous, Jennifer<br>1215 Chanteloupe Dr.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Linkous, John<br>1215 Chanteloupe Dr.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |
| Martin, Barry<br>1927 Oak Hollow<br>Gastonia, NC 28054 | Testamentary Contract - Notice Only |
| Martin, Karen<br>317 Melissa Way<br>Hendersonville, NC 28791 | Testamentary Contract - Notice Only |
| Martin, Wendell and Patricia<br>241 Sherwood Ln.<br>Hendersonville, NC 28791 | Testamentary Contract - Notice Only |
| McDonald, Jane<br>815 Washington Ave.<br>Elyria, OH 44035 | Family Foundation - Notice Only |
| McLaughlin, James and Virgina<br>PO Box 883<br>Port Richey, FL 34673 | Testamentary Contract - Notice Only |
| Moore, Melissa<br>46 E. Trevor St.<br>Charlottesville, IN 46117 | Testamentary Contract - Notice Only |

Sheet   5   of   9   continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Morris, Timothy<br>c/o Stephen Quesenberry, Esq.<br>4844 N. 300 W., Ste. 300<br>Provo, UT 84604 | Family Foundation - Notice Only |
| Murphy, Linda<br>151 Locust St.<br>Arden, NC 28704 | Testamentary Contract - Notice Only |
| Nolan, Anne<br>105 Long Shadow Lane<br>Cary, NC 27511 | Notice Only |
| Nolan, Cynthia<br>3801 Timber Trail<br>Asheville, NC 28804 | Testamentary Contract - Notice Only |
| Nolan, Michael<br>2326 Magnolia Ln. Apt. 2<br>Naples, FL 34112-7563 | Testamentary Contract - Notice Only |
| Owensby, Charles<br>770 Walnut Grove Rd.<br>Dayton, TN 37321 | Testamentary Contract - Notice Only |
| Pace, Reisa<br>370 Blue House Rd.<br>Hendersonville, NC 28792 | Testamentary Contract - Notice Only |

Sheet __6__ of __9__ continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Rohrer, Mark and Dorothy<br>7386 County Rd. 623<br>Millersburg, OH 44654 | Donor Advised Account - Notice Only |
| Russell, Nancy Barr<br>3534 Periwinkle Way<br>Indianapolis, IN 46220 | Testamentary Contract - Notice Only |
| Salvaggio, Gary<br>308 Winding Meadows Dr.<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Seymour, David<br>305 Piney Mountain Dr. G-2<br>Asheville, NC 28802 | Testamentary Contract - Notice Only |
| Seymour, Nancy<br>PO Box 8131<br>Asheville, NC 28814 | Testamentary Contract - Notice Only |
| Shaidle, Susan<br>614 Bolling Ave.<br>Charlottesville, VA 22901 | Testamentary Contact - Notice Only |
| Silsby, Doyle<br>PO Box 248<br>Burr Oak, KS 66936-0248 | Donor Advised Account - Notice Only |
| Slaught, Don and Sandy<br>27 Middle Ridge Lane South<br>Rolling Hills, CA 90274-4055 | Family Foundation - Notice Only |
| Smith,  Jeremy DDS<br>770 Allison Lane<br>San Marcos, TX 78555 | Family Foundation - Notice Only |
| Spechler, Brent<br>917 N. Northlake Dr.<br>Hollywood, FL 33019 | Family Foundation - Notice Only |
| Standley, Bonnie<br>128 Highland Dr.<br>Greenwood, SC 29649 | Testamentary Contract - Notice Only |

Sheet   7   of   9   continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| Sweeney, Michael<br>10 Sagebrush<br>Wichita, KS 67230 | Family Foundation - Notice Only |
| Tyler, Linda<br>761 Preston Trail<br>Wichita, KS 67230 | Family Foundation - Notice Only |
| Underwood, Nancy<br>409 Clarmont Dr.<br>Flat Rock, NC 28731 | Testamentary Contract - Notice Only |
| Underwood, Peter<br>13888 Lewis Mills Way<br>Chantilly, VA 20151 | Testamentary Contract - Notice Only |
| Vardi, Cheryl<br>Kibbutz Ruchama<br>DN HOF Ashkelon<br>Israel  79180 | Testementary Contracts - Notice Only |
| Young, William and Nelle Helms<br>1617 Hendersonville Rd., Apt. 1311<br>Asheville, NC 28803 | Testamentary Contract - Notice Only |

Sheet    8    of    9    continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| Zachary, Christopher<br>510 Price Rd.<br>Hendersonville, NC 28739 | Testamentary Contract - Notice Only |

Sheet   9   of   9   continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

561953.1/20137028